JOE LEWIS v. THE STATE.

*No. 3560. Decided November 8.*

1. **Practice—Declarations as Res Gestæ.**—In order to constitute declarations a part of the *res gestæ* it is not necessary that they were precisely coincident in point of time with the principal fact. If they sprang out of the principal fact, tend to explain

it, were voluntary and spontaneous, and made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous, and are admissible in evidence. See the opinion for declarations of a deceased *held* under this rule to have been properly admitted in evidence.

2. Same—Evidence.—Statements made by a slayer before, at the time of, and even after the homicide, are often pertinent evidence to show express malice. A State's witness testified that several months subsequent to the homicide the defendant told him that he killed the deceased in Belton, and that the defendant in the course of the same conversation said that he wanted to kill K. and others of Belton for interfering with him. This latter statement was objected to as irrelevant. But *held* that it was properly admitted in evidence upon the issue of express malice.

3. Same—Privilege of Counsel.—See the statement of the case for language used in argument by the county attorney *held* not to constitute a breach of the privilege of argument. And note the same for language used in argument by the special prosecuting counsel which, while exceptionable, does not under the circumstances of this case constitute material error.

APPEAL from the District Court of Bell. Tried below before Hon. W. A. Blackburn.

The death penalty was assessed against the appellant upon his conviction in the first degree for the murder of Frances Nora. It appears from the record that both the defendant and the deceased were negroes, and that the latter was the mother-in-law of the former.

A detailed statement of the proof adduced on the trial is not essential to this report. Stated in brief, the testimony for the State shows that some time prior to the homicide the defendant and the deceased lived in Washington County; that in said county the deceased caused the arrest of the defendant for a misdemeanor; that defendant being tried and convicted therefor threatened that upon his release from jail he would kill the deceased for making the complaint against him; that he was seen to pass the house of Kelley in Belton, where the deceased lived, several times on the day preceding the morning of the killing; that he was seen to hurriedly leave Kelley's yard late on the night preceding the fatal morning; that he made several inquiries for the deceased on the night preceding the murder, and that late on the said evening he declared to one witness his purpose to kill the deceased. It was further proved that he came to Kelley's house on the fatal Monday morning while the deceased was washing clothes in the back yard. What then transpired is detailed in the testimony of Mrs. Kelley and Miss Cochran, a guest of Mrs. Kelley. The deceased came into the house and reported to Mrs. Kelley that the defendant was on the place. Mrs. Kelley, followed by Miss Cochran and the deceased, went to the back door, where they met the defendant. Mrs. Kelley testifies that she told defendant that deceased did not want to see him, and that he had better leave. He replied that he was on the eve of leaving Belton, and merely wanted to speak to the deceased, with no intention of hurting her. Deceased went to the wash tub, and witness and Miss Cochran returned to the sitting room, leaving deceased and defend-

ant conversing in a low tone of voice. Ten minutes later witness heard the deceased scream. Looking out through the window she saw that defendant had the deceased bent backward across his left arm. Presently he released her, walked rapidly to the fence, crossed it to the street, and left. Deceased soon came into the house and exclaimed, "He has cut me all to pieces." She died two days later.

Miss Cochran's testimony corroborated Mrs. Kelley in detail. She stated in addition that she observed the defendant closely as he left the yard immediately after the cutting, and that he carried a long, bloody instrument in his right hand. She was unable to say whether it was a knife or a razor.

The defendant was himself the only defense witness who testified to the circumstances immediately attending the cutting. He stated that he several times sought an interview with the deceased on the day and night preceding the killing, his sole purpose being to obtain from her a letter to his wife (deceased's daughter), upon which his wife, who had been separated from him, had agreed to live with him again; that during Sunday night she promised to give him her decision on Monday morning as to whether or not she would write the desired letter; that while on Kelley's premises on Sunday night, seeking an interview with deceased, he lost a razor he then had on his person; that he returned to Kelley's house according to appointment on Monday morning, and secured an interview with deceased in the manner stated by Mrs. Kelley; that he asked deceased for the letter; that she replied to him: "Joe, Mary does not care for you. Let's you and I get married and go off and live. You can work and make a living for us." That he said to her: "You ought to be ashamed of yourself. If I don't live with Mary, I will not live with you." That he then asked her if she had found the razor he had lost the night before; that she replied in the affirmative, when he demanded its return to him; that she thereupon produced it, said "I will give it to you in a way you won't like it," drew it on witness in a threatening manner, and that in the struggle for the razor the deceased was accidentally cut, the fault being her own.

It was shown that the deceased was cut in three different places. The evidence involved in the rulings of the court is sufficiently stated in the opinion.

*J. D. McMahon*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WILLSON, JUDGE.—This conviction is for murder in the first degree and the death penalty is assessed. Deceased was the mother-in-law of the defendant, and was killed with a razor.

Over objection of the defendant the State proved by Doctors Hudson and Talley that within from a half hour to one hour and a half after deceased had been wounded she stated to them that "Joe Lewis had come up behind her while she was at the wash tub, ran his hand under her arm, pulled her backward, and cut her nearly in two." The trial judge explains the admission of this evidence as follows: "The testimony shows the deceased to have been an ignorant negro woman, and that between the infliction of the wound and her statement to the doctors she had not spoken except in a scream or moan caused presumably from pain; and I believe the circumstances surrounding this ignorant negro woman utterly preclude the idea of deliberate design, but on the contrary was as voluntary and spontaneous as if uttered when she fell under the blow. The evidence was not offered or admitted as dying declarations, but as part of the *res gestæ*." We agree with the trial judge that the evidence was *res gestæ* and admissible. In order to constitute declarations a part of the *res gestæ* it is not necessary that they were precisely coincident in point of time with the principal fact. If they sprang out of the principal fact, tend to explain it, were voluntary and spontaneous, and made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous, and are admissible in evidence. Foster v. The State, 8 Texas Ct. App., 248; Tooney v. The State, Id., 452; McInturf v. The State, 20 Texas Ct. App., 335; Powers v. The State, 23 Texas Ct. App., 42; Irby v. The State, 25 Texas Ct. App., 203. We think the declarations made by the deceased and admitted in evidence came within the above stated rule, considering the circumstances under which they were made, which circumstances exclude the conclusion that they might have been made with deliberate design or were fabricated by the deceased.

Anderson, a witness for the State, testified about a conversation he had with the defendant after the homicide, which conversation took place in Laredo, Texas. He testified that the defendant told him in said conversation that he killed the deceased, and in detailing this conversation the witness further stated that defendant said that he wanted to kill Mr. Kelley and others at Belton who had interfered with him, etc. The statements made by the defendant as to other persons than the deceased were objected to by his counsel upon the ground that they were irrelevant. The objection was overruled and a bill of exception reserved, which, although not as full and specific as it should be, will be considered. We think the testimony objected to was relevant and admissible. It was relevant to the issue of express malice. It tended to show that the defendant's enmity towards the deceased was so intense that it embraced her friends. He was speaking about the homicide, and his statements with reference to the other persons whom he desired to kill showed that such desire arose from the friendship of those parties to the deceased, and that it was because of his malice toward her that he entertained mal-

·ice toward them. This, we think, is a fair inference from the conversation as detailed by the witness Anderson. Statements made by a slayer before, at the time of, and even after the homicide, are often pertinent evidence to show express malice. Duebbe v. The State, 1 Texas Ct. App., 159; Garza v. The State, 11 Texas Ct. App., 345; McKinney v. The State, 8 Texas Ct. App., 626. We are clearly of the opinion that the court did not err in admitting the testimony objected to. See also Hart v. The State, 15 Texas Ct. App., 202.

As to the remarks of prosecuting counsel excepted to by the defendant, we see nothing improper in those made by the county attorney. Those made by Judge Kirk were not unexceptionable, but in view of the evidence in the case, could not, we think, have influenced the verdict. Upon the evidence in the case the verdict could not reasonably have been other than guilty of murder in the first degree, and the murder was of a character so brutal, so fiendish and cruel, that the punishment of death, the highest prescribed by the law, is fully warranted.

There is no error for which the conviction should be disturbed, and the judgment is affirmed.

*Affirmed.*

Hurt, J., absent.