### W. G. RUSSELL v. THE STATE.

#### No. 5202.· Decided November 19, 1918.

**1.—Murder—Convict—Witness—Pardon—Rule Stated.**

· When it is shown in a motion for new trial that one of the jurors who rendered the verdict had been convicted of a felony, and was unpardoned, the law requires that the verdict must be set aside. Following Rice v. State, 52 Texas Crim. Rep., 359, and other cases.

**2.—Same—Motion for New Trial—Affidavit.**

Where some of the testimony on the motion for new trial was by affidavit, the same may be used in evidence. Following Dougherty v. State, 59 Texas Crim. Rep., 464.

**3.—Same—Motive—Evidence—Prior Difficulty.**

Where, upon trial of murder, it appeared that the killing grew out of a former difficulty between the deceased and the friend of the appellant, and that the deceased thereby became the object of defendant's resentment, which tended to show motive, there was no error in admitting in evidence the details of the previous encounter between these parties and others.

**4.—Same—Evidence—Declarations of Defendant—Threats.**

Where, upon trial of murder, it developed that the defendant became incensed at the treatment of his friend by the deceased and others in a prior difficulty, there was no error in admitting in evidence the acts and declarations of the defendant with reference to such former difficulty, some time before the homicide, and which carried the implication that the defendant intended to reap vengeance upon all those who were connected with said former difficulty, including the deceased. Following Williams v. State, 40 Texas Crim. Rep., 497.

**5.—Same—Evidence—Rebuttal—Limiting Testimony.**

Upon trial of murder, there was no error in admitting testimony in rebuttal of defendant's testimony with reference to his declarations of killing one of the parties engaged in a former difficulty with his friend, and this did not require a charge of the court limiting such testimony.

**6.—Same—Evidence—Self-defense.**

Where defendant testified to the facts on which his self-defense was predicated, there was no error in admitting testimony that he was under the influence of intoxicants on the afternoon prior to the shooting, etc. Following Green v. State, 53 Texas Crim. Rep., 490, and other cases.

**7.—Same—Silence of Defendant—Evidence.**

Where it did not sufficiently appear that defendant heard the question asked him by the witness why he committed the homicide, to which he made no reply, the same should not have been admitted. Following Frazier v. State, 52 Texas Crim. Rep., 131, and other cases.

**8.—Same—Evidence—Carrying Pistol.**

Where defendant testified to his habit of carrying arms, there was no error in admitting testimony going to show that defendant exhibited his pistols some time before the killing.

**9.—Same—Evidence—Clothes of Deceased.**

Where the position of the arm of the deceased, at the time of the killing, was a material inquiry on the issue of self-defense, there was no error in introducing the coat worn by deceased at that time.

**10.—Same—Jury Wheel—Jury and Jury Law—Talesmen.**

Where the special venire was exhausted, there was no error in the court's failure to resort to the jury wheel for talesmen. Following Mays v. State, 50 Texas Crim. Rep., 165.

**11.—Same—Manslaughter—Charge of Court—Self-defense.**

Where, upon trial of murder, it was shown that defendant became incensed some time prior to the homicide, at an altercation which had then taken place between one of his friends, on one side, and the deceased and others on the other side, and the testimony showed that at the moment of the homicide a direct reference was made by deceased to this prior difficulty, and the defendant shot him when he assumed a hostile attitude toward the defendant, etc., the court should have charged on manslaughter, although the defendant pleaded self-defense.

**12.—Same—Evidence—Acts and Declarations of Defendant—Rule Stated.**

Where a part of the defendant's declaration, in which he expressed himself as ready for trouble, was admissible in evidence to show, in connection with his acts of preparation a reckless disregard of the safety of anyone and everyone who might antagonize him, which might or would include the deceased, there was no error in admitting the same in evidence; however, where part of his declaration had no connection with the supposed injury to his friend, which he proposed to avenge, this part should have been excluded. Following Helvenston v. State, 53 Texas Crim. Rep., 636, and other cases.

Appeal from the District Court of El Paso. Tried below before the Hon. W. D. Howe.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*W. H. Bledsoe, Lea, McGrady & Thomason,* and *Hudspeth & Harper,* for appellant.—On question of jury wheel: Keith v. State, 50 Texas Crim. Rep., 63; Moore v. State, 49 id., 629.

On question of admitting defendant's declarations: Holley v. State,

39 Texas Crim. Rep., 301; Earles v. State, 47 id., 559; Fuller v. State, 54 id., 454; Holland v. State, 56 id., 440; Brown v. State, 56 id., 389; Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 432. ·

On question of defendant's silence when asked who did the shooting: Sauls v. State, 30 Texas Crim. App., 496; Barton v. State, 49 Texas Crim. Rep., 121; Crowell v. State, 56 id., 480; O'Quinn v. State, 55 id., 18.

On question of threats by defendant: Williford v. State, 36 Texas Crim. Rep., 414; Balldrige v. State, 45 id., 193; Holland v. State, 60 id., 117.

On question of admitting testimony as to defendant's intoxication prior to the shooting: Johnson v. State, 27 Texas Crim. App., 163.

On question of admitting clothes of deceased: Cole v. State, 45 Texas Crim. Rep., 225.

On question of manslaughter: Washington v. State, 19 Texas Crim. App., 521; Childers v. State, 33 Texas Crim. Rep., 509.

On question of unpardoned convict: Harrison v. State, 80 Texas Crim. Rep., 457, 191 S. W. Rep., 548; Sullenger v. State, 79 Texas Crim. Rep., 98, 182 S. W. Rep., 1140; Counts v. State, 78 Texas Crim. Rep., 410, 181 S. W. Rep., 723, and cases cited in the opinion.

*E. A. Berry*, Assistant Attorney General, and *Leigh Clark*, District Attorney, for the State.

MORROW, JUDGE.—The conviction was for murder. A reversal of the judgment of conviction in this cause must result from the refusal of the trial court to grant a new trial, when it was disclosed on hearing thereof that one of the jurors who rendered the verdict was an unpardoned convict. The statute required this. Article 692, Code of Criminal Procedure, declares that "one convicted of any felony" is disqualified to sit on a jury, and Article 695 of the Code declares that "no such juror shall be empaneled, although both parties consent thereto." This court in Rice v. State, 52 Texas Crim. Rep., 359, held that when on motion for new trial, it was shown that one of the jurors who rendered the verdict had been convicted of a felony, and was unpardoned, that the law requiring that the verdict be set aside was imperative. This view is supported by the earlier and the later cases. Greer v. State, 14 Texas Crim. App., 179; Bundick v. State, 59 Texas Crim. Rep.. 10.

A judgment of the District Court of Dallas County, showing the conviction of Joe Bozza of a felony was introduced. An issue of fact was formed concerning the identity of the juror Joe Vozza as the convict. From the penitentiary authorities it was shown that Joe Bozza, sometimes called Joe Vozza, served the sentence; that his residence was El Paso, Texas, and gave a minute and detailed description of the convict, showing that he was an Italian, his height, weight, color of eyes and hair, location and description of three scars, his occupation, the

name of relatives residing in El Paso, his conviction at Dallas in 1906. Vozza's wife and sister-in-law and others testified, showing that the description of the convict who served the sentence coincided with that of the juror in detail.

His wife and relative testified to his absence at Dallas at the time of his conviction, ascertained from correspondence with him, and to the receipt of letters from him post-marked at Huntsville, Texas, while he was in the penitentiary there, and advising them of that fact. It was shown that he had stated to parties, and in a deposition after he was released and returned to El Paso, that he had been convicted of the offense mentioned. He was offered as a witness and would have testified to his identity with the convict Bozza, but the court rejected his evidence on the ground of disqualification. It was affirmatively shown that he had not been pardoned. The fact that he was a convict was established and the trial court was without discretion to determine the contrary. Some of the evidence on the hearing relative to motion for new trial was by affidavit. We understand the statute to authorize their use. C. C. P., article 841; Haggard v. State, 77 Texas Crim. Rep., 270, 178 S. W. Rep., 328; Dougherty v. State, 59 Texas Crim. Rep., 474.

On the night of January 2nd, appellant shot and killed Charles Qualey. Immediately before the homicide deceased and one Buchoz were in conversation on a street of El Paso, near the Sheldon Hotel. Buchoz, testifying as a witness for the State, declared that while he and deceased were engaged in a conversation the deceased was shot without having made any demonstration or engaged in any conversation with appellant. Appellant claimed that he was not acquainted with deceased; that he and a companion, while walking on the street on a business mission, passed near Buchoz and deceased; that his attention was attracted by one of them calling his name, which was immediately followed by one of them saying: "Russell, come here"; that he had previously met Buchoz, but did not at the time recognize him or know his companion. On responding to the call deceased said to him, according to his testimony: "I understand you are hunting Louis Ziegler and making a lot of talk about Ted Houghton being beat up." To which appellant replied: "He is a friend of mine," and said: "What is that your business?" Whereupon deceased said, "I will damn quick make it my business," and moved his hand to the right side, and stepped back with one foot, whereupon appellant drew his pistol and fired.

The incidents in evidence leading up to the homicide disclose that on the evening of December 31st one Houghton, in a difficulty at the Ziegler Hotel, in El Paso, had been severely beaten and injured and had been taken to a hospital, and that on the following morning appellant learned of the occurrence, and being a friend of Houghton's, visited him and found him with his leg broken, his nose broken, and otherwise severely injured, and, as appellant thought, seriously injured. He requested Houghton to state the details of the occurrence, which was done, and which, in substance, were that Houghton and some friends,

including one Smith and Kinne, while on a spree had entered one of the booths in the Ziegler Hotel and after remaining there and drinking a while Houghton and Smith approached or entered a nearby booth, in which were the deceased, Qualey, and some companions, and that deceased insulted Smith, whereupon Houghton struck deceased and started out of the building and was overtaken by Ziegler, the proprietor. Ziegler seized his wrist; Houghton struck Ziegler, whereupon some negro employes of Ziegler joined in the melee and attacked Houghton. In the encounter Houghton received the injuries mentioned. Appellant expressed resentment and showed agitation over the occurrence and insisted that he was going to ascertain the truth and going to make Ziegler close the hotel and discharge the negroes.

The evidence is undisputed that appellant went to the Ziegler Hotel on several occasions prior to the homicide. The State introduced evidence to the effect that appellant was armed and had gone to the hotel for the purpose of killing Ziegler and had uttered various threats; that he was drinking intoxicants on the day of the homicide, appellant admitting that he was at the Ziegler Hotel but controverted the threats and design to kill, but claimed that his purpose was to investigate the facts preliminary to instituting prosecution for the assault on Houghton. There was evidence that at the time of the difficulty at the hotel Qualey was under the influence of intoxicants, and that on the occasion of the homicide Buchoz was intoxicated. There was evidence justifying the conclusion by the jury that the treatment of Houghton in the difficulty at the Ziegler Hotel furnished the motive for the homicide, and it appearing that deceased was a participant in that difficulty, at least in its inception, and that appellant had knowledge of the occurrence independent of the relation of it by Houghton, we think proof of the details of the encounter at the Ziegler Hotel was relevant, and are likewise of the opinion that the conversation had by appellant with Houghton at the hospital was admissible, upon the same principle. The evidence shows that Houghton, in that conversation, told appellant that the difficulty was caused by deceased insulting Houghton's companion and that Houghton's assault on deceased resulted in the assault by Ziegler and his negro employes on Houghton. Appellant at once disclosed that he was incensed by the occurrence, and aggrieved at those who took part in it. This was emphasized by his subsequent conduct and threats. Appellant expressed his indignation and intentions to Houghton in the presence of Buchoz, the friend of deceased with whom he was conversing at the time he was killed. From the conversation of Buchoz and deceased, heard by appellant, relative to the difficulty with Houghton, and from appellant's testimony concerning the conversation with, and conduct of, deceased at the time of the homicide, it would be not unnatural to infer that deceased was a party to the outrage upon Houghton, and that appellant was so impressed at the time he fired.

Whether the abuse of Houghton furnished the motive for the homi-

cide, and whether appellant was aware that deceased was one of the objects of appellant's resentment were at least issues of fact arising from the evidence in the case, and the admission of the evidence relating to the details of the difficulty with Houghton and appellant's knowledge thereof, his expressed intentions and circumstances disclosing that they were hostile towards the participants in the difficulty, and his desire and efforts to acquaint himself with them, were relevant to aid the jury in deciding the accuracy of the State's theory that appellant's purpose to find and punish those responsible for his friend Houghton's distress was accomplished in the killing of deceased.

The testimony of Gilchrist that appellant said: "I have been over to the Ziegler Hotel twice looking for Louis Ziegler, but he is hiding from me and I can not find him. This beating up of an old friend and business partner, Ted Houghton, and anyone doing it is going to settle with me." And that appellant throwing his pistol on the table said: "You are a friend of mine, but I had just as soon kill you as anyone, I am here to do business and if you see me doing business don't lay your hands on me"; also that he exhibited the card with the names of Smith and Kinne written thereon, and said, "I want to see these men, and there are others, and I want to find out where they are. I have the names of two parties and I am looking for more of them"; the testimony of Mrs. Franklin, that appellant while at the Ziegler Hotel talked to her about his friend Houghton's beating up, and said: "I will stay with my friends to the limit"; were statements which we think, while they do not name deceased, disclose the animus of appellant towards those connected with Houghton's injury, and his intent to find them, and carry the implication that they include all connected with it. See Branch's Ann. P. C., sec. 2072; Williams v. State, 40 Texas Crim. Rep., 501.

The testimony of McKnight and Gilchrist to the effect that appellant said he had been looking for Ziegler for the purpose of killing him, was properly received in rebuttal of appellant's testimony that his visits to the Ziegler Hotel were for the purpose of learning the facts preliminary to instituting a prosecution, and being admissible in rebuttal the court was not required to limit them to impeachment purposes, although when called to his attention on his cross-examination were denied by appellant.

Appellant testified to the facts on which self-defense is predicated, and we think there was no error in allowing evidence that he was under the influence of intoxicants. It bore on the weight of his evidence. Green v. State, 53 Texas Crim. Rep., 490; Lewis v. State, 33 Texas Crim. Rep., 618; Wallace v. State, 65 Texas Crim. Rep., 654, 145 S. W. Rep., 925; Wharton's Crim. Ev., vol. 2, p. 1720, and vol. 1, p. 785.

The testimony of the witness Vaughan to the effect that shortly after the homicide he asked appellant, "Why he did it," and received no reply, even if any inference adverse to appellant could be drawn from his failure to make reply (which is not at all clear) it does not suffi-

ciently appear that appellant heard the question. Wharton's Crim. Ev., vol. 2, sec. 680; O'Quinn v. State, 55 Texas Crim. Rep., 18; Frazier v. State, 52 Texas Crim. Rep., 131.

We think the bill of exception to the admission of the testimony of McKnight going to show that appellant exhibited his pistols, discloses no error. The appellant testified to his habit of carrying arms.

The position of the arm of deceased was a material inquiry on the issue of self-defense, and as we understand the record, the coat worn by deceased at the time of the homicide, was relevant on that issue.

The provisions of Title 8, Chapter 2, C. C. P., Rev. Stats., 1911, constitute the statutory rules for drawing juries in capital cases. The Act of the Legislature, General Laws 1907, page 269, amended 1911, established procedure for using a wheel instead of jury commissions, in counties containing cities of over 20,000 inhabitants. °There is found in that Act, with reference to drawing special venires in capital cases, only article 660, C. C. P., 1911, which designates a method for drawing a special venire, and in the Act there is no provision touching the method to be pursued after the venire is exhausted. Article 667, which is a part of Title 8, C. C. P., says that "when for any cause there is a failure to select a jury from those who have been summoned upon the special venire, the court shall order the sheriff to summon any number of persons that it may deem advisable for the formation of the jury." Mays v. State, 50 Texas Crim. Rep., 169. The complaint of the failure of the court to resort to the jury wheel for the talesmen can not be sustained.

The State attempts to sustain the action of the court in refusing to charge on manslaughter on the ground that appellant said he shot in self-defense. Defensive issues arise from the whole case and are not controlled by the evidence of the accused alone. The extent to which the assault on Houghton incensed and angered appellant, and the various circumstances and incidents indicating that he continued in a state of rage and excitement therefrom; the fact that according to appellant's testimony, at the moment of the homicide direct reference was made by deceased to the Houghton affair and he assumed a hostile attitude toward appellant by reason thereof; coupled with appellant's evidence that at the time of the homicide the threatening words and conduct of deceased frightened him present a condition in which the propriety of refusing to submit the issue of manslaughter is so ·doubtful that a request of appellant therefor should not be denied.

Reversed and remanded.

*Reversed and remanded.*

ON REHEARING.

March 19, 1919.

MORROW, JUDGE.—The conversation with Gilchrist, set out in the original opinion, was held admissible on the theory that it went to show

the malevolent disposition and design of appellant toward all persons, known or unknown, whom he should identify as causing, inspiring, or participating in the assault upon Houghton, and the extent to which his malignance would be carried. Touching a similar transaction, Judge Ramsey, writing an opinion for this court said, "That part of his declarations in which appellant expressed himself as ready for trouble, would be admissible with the view of showing, in connection with his act of preparation, reckless disregard of the safety of anyone and everyone who might antagonize him and as showing a malignant disposition of all persons or at least such class of persons, as might or would embrace the deceased." Helvenston v. State, 53 Texas Crim. Rep., 640. See also Miller v. State, 31 Texas Crim. Rep., 636; Taylor v. State, 44 Texas Crim. Rep., 549; Wharton on Homicide, sec. 90; Wharton's Crim. Ev., sec. 756 and sec. 709.

That part of the testimony of Gilchrist quoting appellant as saying: "I would just as soon kill you as anyone," taken in connection with the remainder of the conversation, we did not regard as trenching on the rule excluding threats against third parties. Wharton's Crim. Ev., sec. 910. That part of the testimony quoted, however, we have, on further reflection concluded should not on another trial be admitted, there being no suggestion in the evidence that the witness Gilchrist was in any way connected with the injury of Houghton, nor that appellant so regarded him. To the extent that the expression "I would just as soon kill you as anyone" in Gilchrist's testimony was held admissible, the original opinion is modified, and on another trial that expression should be excluded, appellant's motion for rehearing is in all other respects overruled.

*Overruled.*