## W. G. RUSSELL v. THE STATE.

### No. 5605.   Decided January 26, 1921.

### Rehearing denied June 22, 1921.

**1.—Murder—Evidence—Acts of Third Parties—Requested Charge.**

Where, upon trial of murder, the evidence showed that the homicide grew out of a prior difficulty between third parties, there was no error in admitting in evidence the details of said prior difficulty; and there was no error in refusing requested charges excluding said testimony.

**2.—Same—Misquoting Testimony—Practice in Trial Court.**

Where the misquoting by one of the attorneys for the State of the testimony of the case was manifestly a mistake and was immediately withdrawn from the jury, there was no error.

**3.—Same—Requested Charge—Intoxication—Credibility of Witness.**

Upon trial of murder, there was no error in refusing requested charges instructing the jury not to consider the testimony of certain witnesses for any purpose excepting so far as same might aid the jury in passing upon the credibility of defendant as a witness.   His intoxication testified to, affecting the condition of his mind, memory, etc., as a witness, was likewise admissible and should not be limited to the issue of credibility.

**4.—Same—Reproduction of Testimony—Death of Witness.**

Upon trial of murder there was no error to permit the reproduction of the testimony of a witness on the former trial who had since died.   Following Pratt v. State, 63 Texas Crim. Rep., 281, and other cases.

**5.—Same—Acts and Declarations of Defendant—Evidence—Third Parties, Act of.**

Where, upon trial of murder, the conversation and occurrence between defendant and a third party objected to upon the trial shed light upon defendant's condition shortly before the homicide, there was no error in admitting the same in evidence, and also to admit testimony to show an attempt on part of the defendant to kill others with the same motive assigned by the State as actuating defendant in the instant case.

**6.—Same—Evidence—Immateriality of Testimony.**

The proposed testimony to the effect that defendant had a son in the army and two sons-in-law in the navy was properly rejected as immaterial.

**7.—Same—Evidence—Clothes of Deceased.**

Where, upon trial of murder, the introduction in evidence of the clothes of the deceased which he wore at the time of the homicide was material as affecting the relative position of the parties, at the time the shot was fired, there was no reversible error.

**8.—Same—Self-defense—Charge of Court.**

Where, upon trial of murder, the court charged properly on the issue of self-defense, fairly presenting defendant's theory, there was no reversible error.

9.—Same—Rehearing—Precedent.

> Where the opinion rendered in the former appeal decided the questions
> of evidence considered in the instant case adversely to the defendant's con-
> tention, the trial judge properly admitted such evidence involved in the sub-
> sequent trial.

Appeal from the District Court of El Paso. Tried below before the
Honorable W. D. Howe.

Appeal from a conviction of murder; penalty, ten years' imprison-
ment in the penitentiary.

The opinion states the case.

*W. H. Bledsoe, Lee McGrady, Harper & Berkshire,* and *Black &
Smedley,* for appellant.—On question of introducing testimony of prior
difficulty between third parties: Duke v. State, 133 S. W. Rep., 434;
Holley v. State, 39 Texas Crim. Rep., 307; Maclin v. State, 144 S. W.
Rep., 951; Garrett v. State, 52 Texas Crim. Rep., 255.

On question of general threats: Strange v. State, 38 Texas Crim.
Rep., 280; Godwin v. State, 38 id., 466; Lucas v. State, 50 id., 219.

*Alvin M. Owsley,* Assistant Attorney General, and *Leigh Clark,* Dis-
trict Attorney, and *Jackson & Isaacks,* for the State.—On question of
admitting declarations and acts of third parties: Kaufman v. State,
109 S. W. Rep., 172; Brock v. State, 151 id., 801; Gradington v. State,
155 id., 210.

LATTIMORE, JUDGE.—Appellant, W. G. Russell, was convicted of
murder in the District Court of El Paso County, and his punishment
fixed at ten years in the penitentiary. This is the second appeal, 84
Texas Crim. Rep., 245, 209 S. W. Rep., 671. The former opinion
states the facts. The evidence adduced upon this trial is substantially
the same as upon the other and we mention only so much thereof as
we deem necessary to understand our rulings.

Ted Houghton was beaten up on the night of December 31, 1918,
at the Zeiger Hotel in El Paso by Louis Zeiger and some negro em-
ployees of Zeiger, the deceased, Charles Qualey, participating in said
affair as one of the assailants of Houghton. Appellant claimed to be
a friend of Houghton and the next morning went to the hospital and
appeared to be very much incensed over the treatment Houghton had
received. The latter was used as a State witness upon the instant trial
and testified that on said occasion he told appellant the facts pertaining
to the difficulty of the preceding night substantially as he had testified
to the same upon this trial. He testified that he told appellant that de-
ceased was one of the parties who assaulted him, and of the various
expressions of sympathy and indignation used by appellant while at
said hospital. This visit was the morning of January 1st. In the late
afternoon of January 2nd, as deceased was standing on a street of
El Paso talking to a man named Buchoz he was shot by appellant, death

resulting. The State's theory, supported by its testimony, was that appellant had been seeking and inquiring during both the first and second generally for the parties who had beaten up Houghton, making general threats against them all, as well as particular threats against Zeiger and his negro employees, and that his feeling against said parties was the motive for the homicide. According to the State's testimony, appellant was intoxicated at the time of the shooting.

Appellant's theory was that while he may have made threats against some of the parties to the trouble, that his intention was to have them prosecuted, and further, that he did not know deceased or of his being one of said parties; that he was passing along the street at the time of the homicide and a man called him by name; that he asked the man what he wanted and the reply was: "What are you looking for Louis Zeiger for? I understand you are taking a lot of stock in that affair;" that appellant replied, "Houghton is a friend of mine," and deceased said, "Zeiger is a friend of mine;" to which appellant replied, "Well, that is your business," and deceased replied, "I'll damn quick make it my business," and turned to his right, putting his hand down toward his hip pocket; that appellant was scared and excited by this action and conversation and shot deceased. No weapon was found on the body of deceased or around same.

In this condition of the record the witness Houghton was permitted to give the details of the trouble occurring on the night of December 31, in which he was beaten up. Appellant took his exception to this and assigns it as error. This question was fully discussed in our former opinon, and we thnk, correctly decided. Houghton says he detailed these matters to appellant at the hospital and appellant agreed to this when on the witness stand, except, he claimed, that Houghton did not mention the name of the deceased. If the testimony of the State's eye-witness be true, appellant shot deceased while he was unarmed and standing on the street talking to a third party, and apparently unconscious of the approach of appellant. Assuming that its witness told the truth, the State would be entitled to any other facts showing motive, such as the things that occurred at the time of the difficulty, their narration to appellant, his acts and words then and up to the time of the homicide tending to show his feelings and motive in his acts, and the conprehensive threats towards all assailants of Houghton, of whom deceased was one. The exhibition of his pistol, his numerous trips to the Zeiger Hotel, his statement that he had chased Louis Zeiger thru forty rooms in an effort to kill him, were all matters pertinent to the case, in our view.

Appellant sought by various special charges to have the jury instructed not to consider the details of the difficulty on the night of December 31, nor threats made by him against Zeiger and his negro employees. In addition to regarding said charges as on the weight of the testimony, we further observe that under the theory of both the State and the defense, the killing came about as the result of the

Houghton-Zeiger-Qualey difficulty, and in determining whether appellant shot Qualey without other provocation than his resentment toward him for his treatment of Houghton, or because of what appellant testified occurred at the time of the homicide when he stated that deceased accused him of taking a lot of stock in Zeiger's affairs and proposed to make Louis Zeiger's affairs his business,—in either event this evidence was pertinent and to be considered in deciding the guilt or innocence of appellant.

The misquoting by one of the attorneys for the State, of the testimony of the deceased witness, Gilchrist, was manifestly a mistake, and being immediately corrected and the jury instructed not to consider it, presents no ground for reversal.

Special charges, identical in substance, instructing the jury not to consider the testimony of a number of witnesses who were named for any purpose except in so far as same might aid the jury in passing on the credibility of appellant as a witness, were properly refused. None of said witnesses testified that appellant was under the influence of liquor when giving his testimony, but several of them testified, in connection with other matters, that he was very much under the influence of same when the homicide occurred. The testimony of most of said witnesses contained matters material to other issues besides the intoxication of the appellant, but on this point it is our opinion that the intoxication of a party to a crime may be shown in evidence as affecting the condition of his mind, his memory, his temper, his power of observation and for other reasons, and that it would be error to limit the effect of such testimony solely to the one issue of credibility.

There was no error in allowing the witness Elfers to reproduce the testimony of Mr. Gilchrist, who had died since a former trial. Pratt v. State, 53 Texas Crim. Rep., 281; Bennett v. State, 32 Texas Crim. Rep., 216; Black v. State, 1 Texas Crim. App., 384; Sullivan v. State, 6 Texas Crim. App., 339; Dunlap v. State, 9 Texas Crim. App., 188.

The witness McKnight testified that he met appellant on the afternoon of the homicide and told him that he looked like a soldier, and appellant said this was grounds for killing a man, and attempted to draw his six-shooter. The witness stated that this was all in a joking manner between him and appellant, that he caught appellant's hand, pushed the pistol back into appellant's belt and told him he had better put up that gun or somebody would make him eat it. The bill of exceptions set out the various questions and answers. The objection is to the whole matter so set out. That appellant had a pistol during said afternoon when looking for said parties to the Houghton difficulty was clearly pertinent. The conversation and occurence objected to also shed light on appellant's condition shortly before the homicide. This witness stated that appellant was drinking at the time. We do not think any error appears.

Objection was also made to the testimony of this witness to the effect that appellant told him that he ran Louis Zeiger thru forty rooms try-

ing to kill him. We think the evidence material. The only cause for resentment on the part of the appellant against Zeiger, or that might have lead him to try to take Zeiger's life, as far as this record shows, was the difficulty between Zeiger, et al.; with Houghton; and on his trial for killing Qualey, who was one of Houghton's assailants, it would be material to show an attempt to kill others with the same motive assigned by the State as actuating appellant in the instant case.

The offered testimony of the appellant to the effect that he had a son in the Army and two sons-in-law in the Navy was material to no issue and was properly rejected.

The introduction of the coat and vest of deceased appears material as affecting the relative positions of the parties at the time the shot was fired. It was claimed by the State that deceased was talking to Buchoz, and that he made no threatening motion prior to the homicide. Appellant claims that just before he shot, deceased threw his right hand to his hip pocket. A bullet was taken out of the right arm of deceased that had gone thru his body, making holes in the vest and the body of the coat, as well as its sleeve. We think the garments admissible for the purpose of showing the location of the holes.

Appellant criticizes the charge of the trial court because same told the jury that violence used to the person of another is not unlawful when used in self-defense against unlawful violence offered to one's person, and also because of the use in said charge of the word "attack." The trial court told the jury, "If from the evidence you believe the defendant killed the said Charles Qualey but further believe that at the time of so doing the deceased had made or was about to make an attack on him, or that it reasonably appeared from the defendant's standpoint at the time that the deceased had made or was about to make an attack on him which, from the manner and character of it caused him to have a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable expectation or fear the defendant killed the deceased, or if you have a reasonable doubt thereof, you will acquit the defendant." This, we think, a fair presentation of appellant's theory that he shot because he believed from the words and movements of deceased that the latter was about to make an attack on him.

We have given careful consideration to each contention of the appellant, but finding no error for which the judgment should be reversed, same will be affirmed.

*Affirmed.*

ON REHEARING.

June 22, 1921.

HAWKINS, JUDGE.—The motion for rehearing, among other things, urges that this court was in error in holding admissible the details of

the difficulty in which Houghton was injured, and proof of threats made by appellant against Zeiger and the negroes engaged with him in the assault on Houghton. In the opinion rendered on the former appeal (84 Texas Crim. Rep., 245, 209 S. W. Rep., 671) those questions were considered and passed on adversely to appellant's contention, and under authority of that announcement the trial judge properly admitted such evidence in the subsequent trial. Unless it should appear clearly to us at this time that we erred in the former holding it would be manifestly unjust to now hold it inadmissible. The writer was not a member of this court when the former appeal was considered, nor when the opinion on the present appeal was delivered on January 26th this year. An examination of the two opinions discloses that all questions raised in the motions, for rehearing were considered and discussed in the latter opinion, and many of them in the former one. We have again considered them and are still of the belief that proper disposition has been made of the case. A discussion of the various assignments would be only an expression of the writer's individual views, and necessarily in large measure a repetition of what has already been written.

Finding no sufficient reason to change the conclusions heretofore arrived at, the motion for rehearing will be overruled.

*Overruled.*