**Felix SALAZAR and Jesus Torres, Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 38368.**

Court of Criminal Appeals of Texas.

Oct. 4, 1965.

Rehearing Denied Nov. 24, 1965.

Second Motion for Rehearing Denied Jan. 12, 1966.

Bert Kirk, Cuero, Arthur L. Lapham, Victoria, for appellant.

Wiley L. Cheatham, Dist. Atty., Cuero, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The appellants were jointly indicted, tried, and convicted for the murder of one Pete Rosales and each assessed punishment at confinement in the penitentiary for a term of ninety-nine years.

The convictions were under the second count of the indictment, which charged that, while acting together, the appellants did unlawfully, voluntarily, and with malice aforethought, kill the deceased by cutting him with a knife.

It was shown by the state's testimony that on the day in question the deceased came to a beer place in Westhoff which was owned by Alex Anzaldua. The two left the place to try out an automobile which the deceased had purchased that day. After they left, the two appellants and some companions came into the place. Steve Rosales, the father of the deceased, then left the place and went to a cafe, where he informed Anzaldua that "there was a little noise going on" over at his place. Anzaldua and the deceased, accompanied by the deceased's brother Simon Rosales, then returned to Alex's place in the deceased's automobile. When Anzaldua went inside, the appellant Torres was standing by the bar and asked: "Where is that m___ f___ Pete Rosales?" Someone then hit Anzaldua and knocked him out the door. The two appellants then came outside, where an altercation ensued between them and the deceased, Pete Rosales, and his brother Simon. In the fighting, the appellant Salazar produced a pistol and fired some shots, two of the bullets striking the deceased and two striking his brother Simon. Appellant Torres jumped on the deceased and started cutting him with a knife.

It was further shown that when Constable Clyde Whitehead arrived upon the scene, both appellants, whose hands were bloody, handed him their bloodstained knives. Salazar said, "'I did not shoot him, we cut him,'" and Torres said, "'Somebody hit me and I pulled out my knife and started cutting him * * * I just kept cutting him after he fell.'" At such time, the deceased was lying on the ground and, in the words of the officer,

"His head was cut nearly completely off," and there was a large gash over his heart and one across his stomach and there were big gashes across his left arm and leg.

Dr. Paul Obert described the wounds upon the deceased's body and testified that the bullet wounds did not cause death but that the cause of death was massive bleeding from a cut on the neck which went into the big artery.

Appellants testified as witnesses in their own behalf. Appellant Torres testified, in substance, that in the affray he acted in his own self-defense. Appellant Salazar testified that he acted both in his own self-defense and in defense of the appellant Torres.

The court, in his charge, instructed the jury on the right of self-defense and defense of another as to the appellant Salazar and the right of self-defense as to the appellant Torres.

The jury, by their verdict, rejected the defenses interposed by appellants and we find the evidence sufficient to sustain the judgment of conviction.

The appellants predicate their appeal upon certain informal bills of exception.

In the first bill, complaint is made to certain questions propounded to the witness Steve Rosales, the father of the deceased, with reference to whether the deceased was married and if he had a family. The record reflects that after the questions were asked and the witness testified that the deceased was married and had a family of eight, appellant objected on the ground that such procedure was "highly improper," and asked for a mistrial. The objection and the request for a mistrial were by the court overruled. Complaint is also made in the bill to similar questions propounded to the witness as to the marital status of his son Simon.

While under the case of Cavarrubio v. State, 160 Tex.Cr.R. 40, 267 S.W.2d 417,

cited by appellants, such an inquiry is recognized by this court as being irrelevant and immaterial, we are unable to agree that the court's action in permitting the witness to give the testimony calls for a reversal of the conviction. Appellants' objections to the questions were not timely made. We have been cited no case, and know of none, where a conviction for murder has been reversed solely because of proof offered by the state that the deceased was married and left children surviving.

By bill of exception # 2, appellant complains that the court erred in permitting the state's witness Simon Rosales to exhibit to the jury the two bullet wounds on his body which he received in the difficulty, over the objection that exhibiting the wounds was highly prejudicial and inflammatory. It is the appellants' contention that exhibiting the wounds, as described in the record, was reasonably calculated to inflame the minds of the jury. The record reflects that after the witness had exhibited one of the wounds, the jury was taken out and counsel for the defense stated:

"Let the record reflect the witness is showing and has exhibited to the jury his body. That he has pulled his shirt up and he shows the jury a scar across his abdomen about the area of his sternum approximately three and a half to four inches in length. The said scar is purple. It stands out vividly. And also it is a raised scar or proud flesh."

The trial court at no time certified that the facts related by defense counsel were true and correct.

As stated in 5 Tex.Jur.2d 330, Sec. 200:

"The statement of a ground of objection in a bill of exception is not a certificate of the judge that the facts that form the basis of the objection are true. It only shows that such an objection was made, and is accordingly

insufficient. Further, mere recitals in a bill, not verified by the certificate of the judge, or otherwise revealed by the record, cannot be considered as showing injury."

And in Salinas v. State, Tex.Cr.App., 363 S.W.2d 265, this court held that where there were no photographs or description of the scars which would authorize this court to conclude that they had an ugly, ghastly, or revolting appearance or condition such as would be reasonably calculated to influence and prejudice the rights of the appellant before the jury, no error was shown.

In the case at bar, there was no showing that the facts as set out in appellants' objection were true, and therefore show no injury to the rights of the appellants.

Bill of exception # 3 complains of the court's action in permitting the state to show by the witness Simon Rosales that he was treated by a Dr. Davis, of Cuero, for the bullet wounds in the affray and remained in a hospital for four days, over the objection that such testimony was immaterial and irrelevant.

We fail to perceive any reversible error in admitting this testimony.

Other informal bills of exception complain of the court's action in permitting the state to elicit testimony concerning a conversation which took place at the American Cafe in Cuero between appellant Salazar and David Rosales, a brother of the deceased some three or four months after the killing.

Salazar admitted, on cross-examination, that he confronted Rosales and a cousin of deceased in the restaurant, saying to them that he heard they had been looking for him, and asking them if they still wanted trouble. David Rosales testified that appellant on the same occasion called him a son-of-a-bitch, told him to leave the cafe, and said, "Don't make some kind of move because I will shoot your head off."

Appellant contends this evidence is irrelevant, immaterial, and prejudicial. Statements made by a slayer before, at the time of, and after the homicide are pertinent evidence to show express malice. In Lewis v. State, 29 Tex.App. 201, 15 S.W. 642, the accused, in his defense to a murder indictment, claimed the decedent had been killed accidentally while the accused and decedent were fighting. A witness for the state rebutted this theory by testifying that defendant had told him, in a conversation occurring sometime after the killing and in a distant part of the state, that he, the defendant, had killed the deceased and that he wanted to kill certain friends of deceased. The Court of Appeals found no error in the admission of the testimony as to the desire to kill other acquaintances of the deceased, saying, "We think the testimony objected to was relevant and admissible. It was relevant to the issue of express malice. It tended to show that the defendant's enmity towards the deceased was so intense that it embraced her friends * * * it was because of his malice towards her that he entertained malice towards them," citing even earlier cases: Garza v. State, 11 Tex.App. 345; McKinney v. State, 8 Tex.App. 626; Duebbe v. State, 1 Tex.App. 159.

Again, in Russell v. State, 89 Tex.Cr.R. 572, 232 S.W. 309, in rebutting the defendant's contention that he killed the decedent in self-defense, it was shown that defendant became very angry upon learning that a friend had been beaten up by a hotel proprietor and his employees, and testimony that defendant stated that he pursued the hotel proprietor through 40 rooms to kill him was admissible as evidence of malicious temperament in the action against defendant for the death of one of the hotel employees.

And in a prosecution for murder, testimony that defendant had told deceased's wife that he killed deceased because deceased had been killing defendant's dogs was admissible in rebuttal of defendant's claim that he killed deceased for insulting

defendant's wife. Hughes v. State, 97 Tex.Cr.R. 607, 262 S.W. 745.

The accused pleaded self-defense in Carson v. State, 57 Tex.Cr.R. 394, 123 S.W. 590, (reversed and remanded on other grounds). Evidence of statements of the accused, made after the killing, showing intense dislike and ill will towards decedent, was admissible to show this state of mind and to illustrate accused's attitude respecting the killing.

These holdings are now reflected in Art. 1257a, Vernon's Ann.P.C. See Branch's Ann.P.C. 599, par. 2240. The present rule was announced by Judge Hawkins, in Ivey v. State, Tex.Cr.App., 212 S.W.2d 146, where it was held that any competent evidence which tends to defeat the defense urged in a criminal action is admissible, though it tends to show an extraneous offense.

■ Appellant contends that his actions were predicated on fear for his safety and the safety of his friend, Torres, and that he acted in self-defense. Salazar's conduct and statements in the cafe tended to show a malicious temperment and ill feeling toward the Rosales family, and was admissible to rebut the self-defense theory developed by appellants.

Finding no reversible error, the judgment is affirmed.

### ON APPELLANTS' MOTION FOR REHEARING

MORRISON, Judge.

■ The appellants assert, and we agree that the question as to the exhibition of scars on the body of deceased's companion is before us for consideration. We are not, however, impressed with the claim that reversible error is reflected thereby. We cannot bring ourselves to conclude that the mere exhibition of scars standing alone constitutes reversible error.

The burden is upon the appellants to impress this Court with the gruesomeness of the exhibition. This was done to the writer's satisfaction in Burns v. State, Tex. Cr.App., 388 S.W.2d 690. These appellants have failed to do so in the case at bar. See also Grims v. State, 158 Tex.Cr.R. 35, 253 S.W.2d 52, and McMurrey v. State, 145 Tex.Cr.R. 439, 168 S.W.2d 858.

Appellants' motion for rehearing is overruled.