**Fidel DELGADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52298.**

Court of Criminal Appeals of Texas.

Jan. 5, 1977.

Toby Goldsmith, Fort Worth, on appeal only, for appellant.

Tim C. Curry, Dist. Atty. and Marvin L. Collins, Asst. Dist. Atty., Fort Worth, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder. Punishment was assessed by the

jury at twenty-five years. Appellant contends that the court erred in admitting evidence that one of the alleged killers, several days after the homicide at the funeral home, punched an eye of the deceased back into his head, and that the court erred in admitting testimony that appellant and the co-indictees refused to sign the magistrate's warning. We reverse upon the first contention.

The sufficiency of the evidence is not challenged. The offense occurred on June 16, 1974, between 10:00 and 10:30 p. m. Earlier that evening, Danny Salazar and the deceased, David Solis, had a fist-fight at the home of Jasper Galdiano's father. The fight was precipitated by an obscene gesture made by Solis. Afterwards, Solis apologized and told Danny that he hated his brother, Joe Salazar. Danny responded that he and his brothers would "get" Solis.

Later, Solis, his family and several friends went to the nearby home of Jasper Galdiano which was across the street from the residence of Danny Salazar.

At approximately 10:00 p. m., some children playing in Galdiano's front yard ran inside and said that several men had arrived with guns. The men had emerged from two automobiles, one of which was driven by Danny Salazar. The other was driven by appellant, who was accompanied by Joe Salazar, Edward Salazar and George Smith.

Jimmy Lozano and Solis came out of the Galdiano house to determine what was happening. As they walked toward appellant and his friends, shooting broke out. Solis suffered a fatal gunshot wound to the head. Appellant and his four companions left immediately.

Edward Salazar and George Smith both testified that they had followed Danny Salazar to his house to protect him from Solis. They further testified they were unaware that appellant had a shotgun and that Solis precipitated the violence by shooting at them with a pistol.

Appellant testified that he went to Danny's home to help protect him. He further testified that he fired the shotgun three times in self-defense after both Lozano and Solis shot at him.

Appellant was related to the Salazars by marriage. Likewise, the deceased was related to the Alcalas by marriage. An intense hatred existed between the two families as the result of Earnest Alcala, Jr.'s murder by David Perez two years earlier. Manuel and Joe Salazar had been present at that murder but refused to testify against Perez.

Danny and Joe Salazar were arrested and released on bond on June 17, 1974. Appellant was arrested and released on bond on June 18. He was tried first.

On June 19, three days after the murder, Joe Salazar and two other unidentified males visited the deceased's body while it lay in state at a Fort Worth funeral home and one or more of the men pushed the eye back into the head. Appellant was not present at the incident.

Appellant contends the court erroneously admitted evidence of the act involving Joe Salazar at the funeral home. He argues that the act was not committed during the conspiracy to murder and that it occurred after the conspiracy was completed.

■ The State contends that appellant's objections to the challenged testimony were insufficient to present the matter for review. The State called Florence Rodriquez, the deceased's sister, to develop the funeral home incident. Appellant objected as follows:

"MR. SHANNON: (Defense Counsel) Now Your Honor, we are going to object to this. It's immaterial, it's inflammatory, and I think I know what they are leading up to; it has no connection whatsoever with the defendant here, any activity on his part whatsoever."

When the judge indicated that he would sustain the objection, the prosecutor stated:

"Your Honor, we plan to connect this up to the defendant, as an act of co-conspirators, subsequent to the murder."

The challenged testimony was then developed out of the presence of the jury and the objection was renewed.

The objections sufficiently apprised the court of the nature of his challenge to the admission of the evidence.

■ This testimony elicited by the State did not connect appellant to the incident at the funeral parlor. His answer that he did not know to the question, "It happened after somebody had went into Shannons Funeral Parlor and stuck their finger in his eye while he laid in the casket, didn't it?" did not constitute the same testimony that had been introduced over objection and did not constitute a waiver. Questions or statements of counsel not under oath do not constitute evidence.

■ The State proved that appellant and others acted together in murdering Solis. Such proof was by itself sufficient to establish a conspiracy. *Morgan v. State,* 519 S.W.2d 449 (Tex.Cr.App.1975). Declarations or acts of one conspirator may be used against another conspirator if the declaration or act occurred during the course of the conspiracy charged. *Lapp v. State,* 519 S.W.2d 443 (Tex.Cr.App.1975). See *Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

■ In essence, "a conspiracy is a partnership in crime." *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1949). An act or statement after the completion of a conspiracy is inadmissible. *Colunga v. State,* 527 S.W.2d 285 (Tex.Cr.App.1975). See *Krulewitch v. United States,* 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

■ In the instant case, Joe Salazar was not acting during the conspiracy to commit murder. Since his actions at the funeral home occurred three days after the objective of the conspiracy was achieved, the "partnership in crime" was not then his purpose.

The record is devoid of any hint that the scope of the conspiracy was broader than the murder of David Solis. The commission of the murder completed the object of the conspiracy.

The State's reliance on *Salazar v. State,* 397 S.W.2d 220 (Tex.Cr.App.1966), is misplaced. In *Salazar,* the defendant threatened to kill the brother of the deceased several months after the murder. We held that the statements were pertinent evidence to show express malice and rebut defendant's self-defense theory. In the case at bar, appellant was not involved in the funeral home incident. The eye mutilation may be relevant to show Joe Salazar's malice toward Solis and to rebut his potential self-defense theory. But the act is irrelevant and prejudicial insofar as appellant is concerned because the conspiracy was complete and Salazar acted alone.

■ Appellant also contends that the trial court erred in admitting evidence that he and two of his co-indictees refused to sign a statement that they had received the *Miranda* warnings.

This evidence was inadmissible, but since we reverse on the first contention it is not necessary to determine if this amounts to reversible error. It will not likely occur in the event of a new trial.

The judgment is reversed and the cause is remanded.