Harvey Dale WEBB, Appellant,

v.

The STATE of Texas, Appellee.

No. 43156.

Court of Criminal Appeals of Texas.

Nov. 10, 1970.

Rehearing Denied Dec. 31, 1970.

Tommy Warford, Saul Pullman, East-land, for appellant.

Emory C. Walton, County & Dist. Atty., Eastland, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

The conviction is for statutory rape. The punishment was assessed by the court at seventy-five years.

The State's motion to dismiss the appeal will be considered. (This was the same escape discussed in Webb v. State,

Tex.Cr.App., 449 S.W.2d 230.) An affidavit dated July 23, 1969 by the sheriff of Eastland County recited that appellant escaped jail on May 27, 1969 and did not voluntarily return within ten days after the escape and that the sheriff did not have any knowledge of his whereabouts. It appears that appellant was arrested in Oklahoma City on the 13th day of October, 1969 and was returned to custody.

The record was approved by the trial court in January and filed in the Court of Criminal Appeals on May 18, 1970.

The trial court retains jurisdiction until the record on appeal reaches this Court. Unless the appellant is out of custody when the approved record is filed in this Court, we do not have jurisdiction to dismiss the appeal. McGee v. State, Tex.Cr. App., 445 S.W.2d 187. See Webb v. State, supra. The motion to dismiss the appeal is denied.

The summary of the facts in the State's brief is adopted (omitting the names of the prosecutrix and her boyfriend) and is as follows:

"On April 11, 1968, the Prosecutrix, _____, age 17, and her boyfriend, _____, age 20, went to Benbrook Dam at Fort Worth, Texas, to have lunch and while there, they were taken hostage by Appellant and his two companions who identified themselves as 'Clyde Barrow' (the Appellant herein), 'Bonnie Parker' and 'Jessie James.' The Appellant and his two companions had two pistols when they went to Miss _____'s car, at which time the trio took their belongings from a U–Haul truck and placed the same in Miss _____'s automobile. The Appellant and his companions then forced —(prosecutrix) and —(her boyfriend) to accompany them as the Appellant drove Miss _____'s automobile to Stephenville, Texas, where he used Miss _____'s gasoline credit card to purchase gasoline. Thereafter, the Appellant continued to drive Miss _____'s car over various back-roads until at approximately 3:30 p. m., he turned off a back paved road, drove down a dirt road through a wire gate and into a pasture where he backed Miss _____ _____'s car into the trees. Thereafter, the Appellant informed the group that he knew of a farm house nearby and informed Miss _____ and Mr. _____ that he would take Miss _____ to the farm house and let her go. Instead, the Appellant, with a loaded pistol, took Miss _____ over the hill about 100 yards and out of sight of the others where he made her stop, completely disrobe out in the open, and lay her dress on the ground. Shortly prior to making Miss _____ disrobe, the Appellant fired his pistol over her head.

"The Appellant asked Miss _____ if she had ever had sex and she replied that she hadn't. He made her lie down on her dress where he fondled her female parts after which he raped her twice; when she started to cry out, he told her to shut up and to relax, and if she didn't, he would kill her. ·After this, the Appellant kept her at the place where he had raped her for approximately thirty minutes, during which time he made her talk with him about various subjects. When the Appellant left with Miss _____ to return to the car, he threatened her if she told the others what had happened.

"At approximately 6:00 p. m., the Appellant, his two companions and the two hostages left the pasture and proceeded to a deserted road between Snyder, Texas, and Gail, Texas, where Miss _____ and Mr. _____ were let out of Miss _____'s automobile at 9:30 to 10:00 p. m. The Appellant and his companions continued in Miss _____'s car. Mr. _____ and Miss _____ finally found a farm house a mile or so away where they notified the authorities."

In the first ground of error it is contended that the court erred in not granting

a continuance to allow court appointed counsel to prepare appellant's case and in overruling the renewed motion for continuance to study a medical report of a court appointed physician.

The indictment was returned on June 19, 1968. A bench warrant was issued and on March 7, 1969, appellant was taken from Fort Worth to Eastland County. On March 14th, the Honorable Tommy Warford was appointed to represent appellant. The case was set for trial on April 14th. On March 28, Mr. Warford asked the court to appoint co-counsel, and at that time the court appointed the Honorable Saul Pullman to assist in the preparation and trial of the case. On the same day a motion for continuance was filed. The following was alleged in the motion:

"Much of the information vital to Defendant's defense has to be secured from various out-of-state parties, namely from Doctors' Hospital, Inc., Shreveport, La.; Arizona State Penitentiary, Florence, Ariz.; Edna Martin, Shreveport, La.; and M. G. Adams, Roswell, N.M.. As of this date, attorney for Defendant has received little, if any, response from inquiries sent to the above named parties. Therefore, Defendant says that he cannot safely go to trial in said cause on the date of April 14, 1969."

The State answered that the motion set forth no facts which would show that the witnesses and their sources of information would be material.

Appellant's motion for a medical examination by a physician to be selected by his attorney was denied. The court appointed R. C. Ferguson, M.D., to examine appellant.

The record shows that the State agreed to waive the formalities in the taking of a deposition of Dr. Charles E. Boyd in Shreveport, Louisiana, on the 8th day of April.

On the 14th of April, the date of the trial, a renewed motion for continuance was filed wherein it was alleged lack of time to prepare, that the written interrogatories had not been returned from Louisiana, and that the State of Arizona refused to release medical records which showed that appellant had syphilis.

The prosecutor answered this renewed motion for continuance alleging, among other things, that appellant had undergone a psychiatric examination and that a copy of the report had been furnished defense counsel.

A motion for new trial was filed with one of the grounds being the overruling of the motion for continuance. The record contains no testimony or evidence on the motion for new trial. No psychiatric report was presented by appellant. No evidence of any sort before, during or after the trial was offered to show insanity.

■ The allegations in a motion for continuance or new trial do not prove themselves. Absent any proof or affidavit of a witness at the hearing on motion for new trial showing what testimony of an absent witness would have been, nothing is presented for review. Brito v. State, 459 S.W.2d 834; Kingham v. State, Tex.Cr. App., 374 S.W.2d 438.

■ The court appointed counsel a month before the trial. The failure to grant additional time to prepare for trial is not error. Klechka v. State, Tex.Cr.App., 429 S.W.2d 900. No abuse of discretion has been shown. The first ground of error is overruled.

In the second ground of error, appellant contends that reversible error was committed in overruling his bills of exception and refusing to grant a hearing before approving the record.

The motion for new trial was overruled May 7, 1969. On May 26, appellant requested a record. The following day appellant escaped. He was recaptured and returned to custody on October 13, 1969. The court reporter was then ordered to prepare the record. Notice of completion of the record was mailed January 27, 1970,

in accordance with Article 40.09, Sec. 7, Vernon's Ann.C.C.P. No objection to the record was filed within fifteen days and the court approved the record on February 12, 1970.

 The bills of exception which the court would not approve were not presented to him within ninety days after notice of appeal was given as required by Article 40.09, Sec. 6(a), V.A.C.C.P. In fact, the bills were presented on February 13, 1970, some six months late. No good cause for the delay in presenting the bills is shown. Certainly his escape from jail and continued absence would not constitute good cause. The trial court did not err in refusing to permit their late filing.

The second ground of error is overruled.

 In the third ground of error complaint is made that the assessment of seventy-five years was excessive. Article 1189, Vernon's Ann.P.C., provides that the punishment for rape shall be death or by confinement in the penitentiary for life or for any term of years not less than five.

The punishment assessed was within the statutory limit and is not excessive.

The third ground of error is overruled.

There being no reversible error, the judgment is affirmed.