William **WINKLE**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 47393, 47394.

Court of Criminal Appeals of Texas.

March 13, 1974.

Rehearing Denied April 3, 1974.

Malcolm Dade and Richard Wilhelm, Dallas, for appellant.

Henry Wade, District Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

These appeals are from convictions for rape, in a single trial, wherein the punishment was assessed by the jury at life in each case.

At the outset we shall consider appellant's complaint that he was arraigned in both cases in the presence of the jury. This court has repeatedly stated that the practice of conducting arraignment in the presence of the jury should not be condoned, and trial courts should be careful to avoid such practice. Minafee v. State, 482 S.W.2d 273, 276 (Tex.Cr.App.1972); Stewart v. State, 473 S.W.2d 495, 496–497 (Tex.Cr.App.1971); Thompson v. State, 447 S.W.2d 920, 922 (Tex.Cr.App.1969). In the instant case, however, as in Stewart, there was no objection to the arraignments being conducted in the jury's presence and we find no reversible error.

Next, appellant challenges the sufficiency of the evidence to sustain the convictions.

On the evening of March 18, 1972, the 18-year old prosecutrixes, A—— and V——, were driving to a miniature golf course in Dallas after being denied admittance at Lou Ann's because they were unescorted when a car driven by Jack Gamble and containing the appellant and Joe Gamble pulled alongside and motioned for them to stop. The girls complied with the request of the unknown trio and, after a short conversation, the girls were invited to a party and agreed to go. The appellant and Joe Gamble got into V——'s car and gave directions to Joe Gamble's house, while Jack Gamble left in the other car to pick up his date.

The group drove to a house located in the Pleasant Grove area of Dallas County and upon entering, began to listen to music, strum the guitar and play with some puppies. Later, Jack Gamble arrived with his date, changed his shirt and announced he and his date were not staying. At this point A—— and V—— decided to leave, but discovered that V——'s car would not start. The appellant and Joe Gamble worked on the car, but were not successful and the girls were persuaded to come back into the house and let the motor "cool." After some discussion about calling a mechanic, the appellant and Joe Gamble drew butcher

knives, pushed the girls into a bedroom and ordered them to undress. The appellant and Gamble then had numerous acts of sexual intercourse with each girl, performed rectal sodomy on the girls and forced them to perform acts of oral sodomy, and then forced the girls to commit oral sodomy upon each other. These acts took place over a three or four hour period.

After the girls had been allowed to dress, Jack Gamble returned from his date and V—— related she told him what had transpired. Subsequently, one of the men repaired V——'s automobile and the girls were permitted to leave after being threatened they would be killed if they told what had happened and after they promised to remain silent.

About 5 a. m. the girls arrived at A——'s home in Mesquite and told A——'s mother they had been at the house of V——'s sister, but came home because the people at the sister's house had been called out of town. Upon awakening at 8:30 a. m., the girls related to A——'s mother they had been raped. The police were called. They pointed out the house in question to the police and were taken to the hospital for an examination.

The appellant did not testify, but called Jack Gamble, who testified that he returned to the house after 3 a. m. and found the girls fully clothed and that, after a short discussion with V——, she went with him to the living room, where he pulled out a hideaway bed, laid on it with V——, kissing and was "starting to make out" when A—— came in and said she and V—— had to leave.

■ Dr. Robert Gardner, a defense witness, testified that he examined both girls and found no signs of trauma, bleeding, nor observed any anal irritation in either girl. He related he failed to find any evidence of sperm in their vaginas. The girls had testified that neither man had reached a climax during the numerous sex acts.

In rebuttal A——'s mother testified the doctor had told her he had found evidence of sexual intercourse.

It is appellant's contention that since the prosecutrixes' stories were severely impeached by the examining physician, and other facts, their testimony is not worthy of belief.

The prosecutrixes repeatedly testified that appellant had penetrated their private parts with his male organ. They were in the same room and corroborated each other's testimony. Although the examining physician expressed an opinion inconsistent with that of forcible rape, the jury was at liberty to believe any part of the testimony and reject the remainder.

It is true that the girls did not make an immediate outcry upon return to A——'s home, but they explained they were scared because of the threats upon their lives and were not sure what to do, and delayed their outcry for several hours.

The jury observed the witnesses, passed on their credibility, and chose to believe the girls' explanation, and this court should not disturb the verdict where the same is based on probative evidence. 48 Tex.Jur.2d, Rape, Sec. 77, p. 426; Blackmon v. State, 87 Tex.Cr.R. 173, 220 S.W. 93 (1920); Barry v. State, 165 Tex.Cr.R. 204, 305 S.W.2d 580 (1957).

Viewing the evidence in the light most favorable to the jury's verdict, as we are required to do, we deem it sufficient to sustain the convictions.

Next, appellant contends the trial court erred in permitting two butcher knives to be introduced into evidence, as they were seized under a defective search warrant.

The record reflects that Dallas Police Officer Jack Cranford talked to the prosecutrixes and learned that the butcher knives used had been placed in a dresser drawer in the bedroom where the offenses took place. Thereafter he filed a search warrant affidavit seeking a warrant to search for implements kept for the purpose

of aiding in the commission of an offense, to-wit: rape and described such implements as "knives." The search warrant was issued and the affiant-officer and others went to the house in question and searched the dresser drawer and found the butcher knives which were introduced, over objection, into evidence.

Appellant contends that the search warrant is defective because it does not describe the implements to be searched for as "knives." The warrant authorized the officers to search the place described "where implements, *such as are above named*, are kept for the purpose of aiding in the commission of the offense of Rape and if you find there any such implements, you will seize the same . . . ." Appellant argues that implements were not "above named" or described and the warrant did not comply with the provisions of Article 18.13(3), Vernon's Ann.C.C.P., which provides, among other requisites of a search warrant,

> "That it describe, as near as may be, the property supposed to be commonly concealed in such suspected place, or the implements alleged to be there kept for the purpose of aiding in the commission of offenses, and state the particular offense for which such implements are designed."

In the instant case the record reflects that within 30 minutes after the affiant-officer Cranford had obtained a search warrant he searched the house in question for the knives, finding the same exactly where they were described as being. There was no general or exploratory search for any other type of implements.

■ It is clear that Article 18.13(3), supra, was designed to inform the officers executing a warrant what implements to search for. In the instant case the officer who had made the affidavit, armed with the warrant and affidavit which described the implements as "knives," made the search. While the search warrant should have described the implements, we perceive no reversible error under the circumstances. Cf. Phenix v. State, 488 S.W.2d 759 (Tex.Cr.App.1972); Johnson v. State, 469 S.W.2d 581 (Tex.Cr.App.1971).

Further, it is observed that, prior to introduction of the knives into evidence, both prosecutrixes testified, without objection, that the knives appeared to be the same ones used by the appellant and Joe Gamble.

The ground of error is overruled.

■ Appellant also complains of the trial court's action in permitting the prosecutor to inquire of Jack Gamble, a defense witness, about extraneous offenses committed by the appellant.

On cross-examination Gamble was asked that if the appellant had told the girls "he had been up for rape before," would it be a true statement. A number of objections ensued and were overruled. Finally, the witness admitted that of his own personal knowledge he knew that appellant had been convicted of rape.

When the first question was asked, appellant's objection was that it was "highly prejudicial." At no time was the trial court's attention directed to the complaint now raised on appeal that the prosecutor was improperly seeking to elicit evidence of extraneous offenses. While the questions were improper under the circumstances, appellant's general objection was not sufficient to preserve the matter for review.

■ Appellant also complains that Gamble was also asked if "the other girls that he (the appellant) has raped, he has never had a climax?" The objection "that is an assumption of fact" was sustained and appellant failed to pursue his request for a jury instruction to disregard until he obtained a ruling. Nothing is presented for review. See Hicks v. State, 493 S.W.2d 833 (Tex.Cr.App.1973).

■ Appellant also complains of questions directed to Gamble inquiring if he had seen appellant with a girl named C——

A—— S——, who had a five months old baby and a woman named W—— B—— H——. The witness denied both instances before a general objection was interposed. Nothing is presented for review.

Next, appellant complains of the trial court's failure to respond to the following written objection to the charge at the guilt stage of the trial:

> "That the trial court *has* in its charge has failed to properly limit certain evidence dealing with another conviction for this defendant and the facts and circumstances surrounding such alleged offense."

■ The written objection fails to clearly point out just what testimony it had reference thereto and what type of limitation was desired. Apparently it has reference to a prior rape conviction, but it is here noted that the prosecutrixes testified that the appellant had threatened them, told them he had been convicted and was on probation for rape, and further that he had raped another girl whom he had killed. This testimony was clearly admissible and not subject to any type of limiting charge.[1] In his appellate brief appellant contends the written objection to the charge was addressed to the testimony of Jack Gamble above described, and argues that such testimony of an extraneous offense or offenses should have been limited to the issues of intent, identity, or for whatever reason it was admitted, not surrendering his contention that the same was not admissible in the first place. As noted earlier, the elicitation of the testimony from Jack Gamble concerning the prior conviction was improper, but the appellant did not properly preserve his error.

■ Under the circumstances, we cannot agree the court failed to respond to the written objection to the court's charge and limit the testimony to some issue for which it was not admitted or admissible. No er-ror is presented. See Article 36.19, Vernon's Ann.C.C.P.

Appellant's next complaint relates to statements made by the prosecutor during the argument, which, according to appellant, commented on his failure to testify.

One such incident occurred and involved the following colloquy:

> "MR. OVARD: Now think about the girls for a moment. Think what you have to go through when you are a victim of a rape case. I really don't blame the girl, or a woman that doesn't go through with it, because here's what you have to do, and you heard it from the stand. First, you have got to go to the Police, and you go before an experienced investigator who talks to you. He makes a determination because in this case he talked to both the girls, he talked to this Defendant, he talked to the other Defendant before he filed the case of rape. That's the first thing they have to do."

Such argument was objected to on the ground that the prosecutor was commenting on appellant's failure to take the stand.

Article 38.08, Vernon's Ann.C.C.P., prohibits allusion to or comment upon the failure of an accused to testify in his own behalf. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ As stated in Yates v. State, 488 S.W.2d 463 (Tex.Cr.App.1972), for there to be reversible error because of a comment on the failure of the accused to testify, the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to an accused's failure to testify must be a necessary one. Further, it is not sufficient that the language might be construed as an implied or indirect allusion thereto. See Lipscomb v. State, 467 S.W. 2d 417 (Tex.Cr.App.1971); Ramos v. State, 419 S.W.2d 359 (Tex.Cr.App.1967).

---

[1]  Welch v. State, 373 S.W.2d 497, 500 (Tex.Cr.App.1964).

The prosecutor's argument, when taken in the context in which it was made, does not reflect that it was a comment upon the appellant's failure to testify.

Appellant's contention is without merit.

Lastly, we shall consider appellant's contention that the court erred in overruling his objection to the prosecutor's comment on the failure to call the co-defendant Joe Gamble.

The argument complained of is as follows:

" . . . there were only four people out there in that bedroom, those two girls who we brought down to testify before you, this Defendant, who sits here and his friend, Gamble, who (sic) you didn't get to hear testify. I wonder why?"

The objection that it was an improper comment was overruled. Over further objection the prosecutor pointed out Gamble was a friend of the appellant and a principal.

We start with the observation that the prosecution has the right to comment on the accused's failure to call competent and material witnesses. Miller v. State, 458 S.W.2d 680, 683 (Tex.Cr.App.1970) and cases there cited. See also Batiste v. State, 462 S.W.2d 30 (Tex.Cr.App.1971); Joines v. State, 482 S.W.2d 205 (Tex.Cr. App.1972); Rodgers v. State, 486 S.W.2d 794 (Tex.Cr.App.1972).

A co-defendant is now a competent witness for either the State or the accused. See Article 36.09, Vernon's Ann.C. C.P. See also Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); Overton v. State, 419 S.W.2d 371 (Tex.Cr.App.1967); Ex parte Pennington, 471 S.W.2d 578 (Tex.Cr.App.1971) and cases there cited.

Formerly, a prosecutor's comment in jury argument on a defendant's failure to call a co-defendant as a witness was re-versible error since the former statutes (Article 711, Vernon's Ann.C.C.P.1925, and Article 82, Vernon's Ann.P.C.) rendered the co-defendant incompetent as a witness. See, i. e., Landers v. State, 63 S.W. 557 (Tex.Cr.App.1901); Ramirez v. State, 112 Tex.Cr.R. 332, 16 S.W.2d 814 (Tex.Cr. App.1929); Grille v. State, 112 Tex.Cr.R. 561, 17 S.W.2d 833 (1929); Clayton v. State, 139 Tex.Cr.R. 86, 138 S.W.2d 1084 (1940). Those statutes are no longer viable in light of the 1965 Code of Criminal Procedure and the decision in Washington v. Texas, supra.

Appellant's contention is overruled.

Finding no reversible error, the judgments are affirmed.

ODOM, J., concurs in this result.