George Washington HICKS,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 49508.

Court of Criminal Appeals of Texas.

July 16, 1975.

Charles L. Cantrell, Waco, for appellant.

Martin D. Eichelberger, Dist. Atty., Felipe Reyna and Ward Casey, Asst. Dist. Attys., Waco, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for statutory rape, where the punishment was assessed at life imprisonment by the court following a jury's verdict of guilty.

At the outset we are confronted with the complaint that the assistant district attorney improperly alluded to the failure of the

appellant to testify. See Article 38.08, Vernon's Ann.C.C.P.[1]

During the argument of the prosecutor at the guilt stage of the trial, he stated, "I'll tell you what. You know that defendant sits over there, and he's had the benefit of this court appointed lawyer, and he has had the psychiatrist and he has had a couple of bites at the apple—you know that—."

Then shortly thereafter he argued:

"But, anyway, he looks—you know—he is sitting over there—you know—we had Dr. Anderson—Dr. Anderson had that thing there, and he had his lawyer arguing to you and everything. But there is somebody that we haven't heard from in this case. And I think you all know who it is.

"MR. CANTRELL: Your Honor, we're going to object to that comment. He is obviously commenting—inferring by the place he stood—let the record reflect that he stood right behind the defendant, raised his voice, at that time, and objected—excuse me—not objected—said, 'We haven't heard from somebody in this court.' At that time, Mr. Casey looked down at the defendant in such that by his actions and inferences and comments made, was a comment on not testifying by the defendant.

"MR. CASEY: I was referring to Dr. Stockton, Your Honor.

"MR. CANTRELL: You were not.

"MR. CASEY: Let the record clearly reflect that I was talking about the medical testimony, and Dr. Stockton, the man that took the EEG wasn't up here testifying in Court.

"THE COURT: I'll overrule your objection.

"MR. CANTRELL: Note our exception."[2]

■ For there to be reversible error because of an allusion to or comment on the failure of an accused to testify in his own behalf, the language used must be looked to from the standpoint of the jury, and the implication that language used had reference to such failure to testify must be a necessary one. *Winkle v. State,* 506 S.W.2d 891 (Tex.Cr.App.1974); *Turner v. State,* 504 S.W.2d 843 (Tex.Cr.App.1974); *Yates v. State,* 488 S.W.2d 463 (Tex.Cr.App.1972); *Ramos v. State,* 419 S.W.2d 359 (Tex.Cr.App.1967). Further, "[i]t is not sufficient that the language might be construed as an implied or indirect allusion thereto." *Yates v. State, supra,* at p. 466; *Winkle v. State, supra; Turner v. State, supra.*

In *Garcia v. State,* 513 S.W.2d 559, 561–562 (Tex.Cr.App.1974), a McLennan County case involving the same prosecutor as in the instant case, this court wrote, "It is asserted in appellant's brief that when the prosecutor said, 'there is one person we didn't hear from in this trial,' he stood behind appellant, then when the objection was made, he said, 'from defendant's mother.' If this occurred as appellant recited in his brief, it would doubtless be a direct reference to the failure of appellant to testify, but the record does not support the claim that the assistant district attorney stood behind appellant and thus directed his remarks to his failure to take the stand."

■ In the instant case the alert defense counsel stated for the purpose of the record

---

1. Article 38.08, Vernon's Ann.C.C.P., reads as follows:

   "Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause."

2. It is observed that earlier during the cross-examination of a lay witness for the defense as to the appellant's mental condition the record reflects:

   "BY MR. CASEY:

   "Q Are you telling this jury that if George Washington Hicks was to take this stand and testify, that they couldn't believe anything that he said, because he wouldn't know wrong from right?"

   The objection that the same was a comment on the appellant's failure to testify was overruled.

that the prosecutor was standing behind the appellant when he raised his voice, looked down at the appellant and stated, "But there is somebody that we haven't heard from in this case. And I think you all know who it is."

This statement, made for the purpose of the record and recorded by the court reporter as to the prosecutor's physical actions, was undisputed by the prosecutor and unquestioned and unqualified by the court in whose presence the statement was made.

Article 40.09, subd. 4, Vernon's Ann.C. C.P., 1965, reads in part as follows:

". . . A transcription of the reporter's notes when certified to by him and included in the record shall establish the occurrence and existence of all testimony, argument, motions, pleas, objections, exceptions, court actions, refusals of the court to act and other events

thereby shown and no further proof of the occurrence or existence of same shall be necessary on appeal; provided, however, that the court shall have power, after hearing, to enter and make part of the record any finding or adjudication which the court may deem essential to make any such transcription speak the truth in any particular in which the court finds it does not speak the truth and any such finding or adjudication having support in the evidence shall be final."

The record was so certified by the court reporter.

There were no objections to the record and the court caused no hearing to be held in order that the record speak the truth. The record was approved by the trial court. Article 40.09, subd. 7, Vernon's Ann.C.C.P. And we note the State's brief does not contend that the event referred to did not occur.[3]

---

3. The dissent relies upon *Salazar v. State*, 397 S.W.2d 220 (Tex.Cr.App.1965), a murder prosecution which was tried before the 1965 Code of Criminal Procedure and Article 40.09, Vernon's Ann.C.C.P., became effective, and was thus controlled by the former Code of Criminal Procedure. In the opinion on original submission in *Salazar* the court held that his "bill of exception" could not be considered because the facts related by the defense counsel (that the deceased's brother, a State's witness, was showing his scars to the jury) was not certified by the trial court. In support thereof the court quoted from 5 Tex.Jur.2d, Appeal and Error—Criminal Cases, Sec. 200, p. 330, that such certification was required. However, this quote dealt with the statutory requirements of a *formal* bill of exception under the former Code of Criminal Procedure. Highly significant is the fact that in the opinion on rehearing this court, without setting out any further facts or reasoning, concluded the bill of exception was properly before this court and that exhibition of the scars was not error. An examination of the record in *Salazar* shows that the bill of exception involved was an *informal* bill of exception found in the statement of facts as opposed to a *formal* bill of exception. *Salazar* is clearly not controlling or applicable. The dissent also cites *Wingate v. State*, 487 S.W.2d 89 (Tex.Cr.App.1972), which involved a hearing on a motion for new trial wherein counsel merely stated he had re-

ceived "new evidence" since the trial that the witness Moore used a wheelchair and not a stretcher as he had done during trial and that a "hoax" had been perpetrated on the court. This statement was not supported by evidence at the hearing and related to something counsel had learned out of court after the trial. *Wingate* was correctly decided, but it is not applicable to the instant case.

The dissent also calls attention to *Barrientez v. State*, 487 S.W.2d 97 (Tex.Cr.App. 1972). *Barrientez* is distinguishable. There, defense counsel asserted that pictures the State had offered and which had been ruled inadmissible were in a position where they could be seen by the jury. Such assertion was not sufficient, standing alone, to establish that the jurors had seen the pictures since such fact was not within the knowledge of the assertor. It was necessary to establish that the jurors had seen the pictures before there would have been any basis to appellant's claim that the prosecutor had exhibited the pictures to the jury. *Ross v. State*, 504 S.W.2d 862 (Tex.Cr. App.1974), mentioned by the dissent, did not involve a question of necessity of certification by the judge of the remarks made by defense counsel. It involved the right of the accused to call his wife as a witness before the jury as to the issue of the voluntariness of his confession. In the course of the opinion this court quoted defense counsel's statement that the court had refused to per-

The State points out, however, that Dr. Jack Anderson, a psychiatrist who testified for the defense on the issue of insanity, related on cross-examination that the tracing of an electroencephalogram "run" on the appellant, to which he had referred on direct examination, had been read by Dr. Robert Stockton, a neurosurgeon. Dr. James Grigson, a State's rebuttal witness, testified that an electroencephalogram was useful but not essential to a proper diagnosis, that if he thought it was important he would talk to the doctor who interpreted it, that if Dr. Anderson had told him he (Anderson) didn't know how to interpret the tracing he would "want to hear from Dr. Stockton." Then the record on re-direct examination reflects:

"Q And if you were sitting on a jury, you would want to hear the same thing too, wouldn't you?

"A I don't think it would make a bit of difference in this case."

■ While the State clearly has the right to comment upon the accused's failure to call a certain witness to support his defensive theory, *Miller v. State*, 458 S.W.2d 680 (Tex.Cr.App.1970); *Joines v. State*, 482 S.W.2d 205 (Tex.Cr.App.1972), this right may not be utilized in such a way that the prosecutor can improperly comment on the

defendant's failure to testify and then excuse the same, upon objection, by stating he was referring to someone else. In the instant case the prosecutor stated, upon objection, he was referring to Dr. Stockton, while in *Garcia* the same prosecutor, upon objection, stated he was referring to the defendant's mother. Unlike *Garcia*, however, this record shows without dispute that when the complained of remark was made in the jury's presence the assistant district attorney was standing behind the appellant, raised his voice and looked down at the appellant.

■ The argument in conjunction with the prosecutor's physical actions was manifestly intended to be, and was, of such a character that the jury would naturally or necessarily take it as a comment on the failure of the appellant to testify. *Chapman v. State*, 504 S.W.2d 912 (Tex.Cr.App. 1974); *Lipscomb v. State*, 467 S.W.2d 417 (Tex.Cr.App.1971); *Ramos v. State, supra.* This was a clear violation of Article 38.08, Vernon's Ann.C.C.P.

It is regrettable that a prosecutor would continue to engage in improper conduct depriving a defendant of a fair and impartial trial when such conduct is totally unnecessary to secure a conviction. See and compare *Koller v. State*, 518 S.W.2d 373 (Tex.

mit the wife to testify and the court responded, "Yes, sir, bring the Jury in please . . . ." If the "Yes, sir" did in fact refer to the statement of counsel, the *Ross* case did not turn on that fact.

The dissent appears to argue that the court's approval of the record is not the certification required and tries to limit the certification encompassed by the approval of the record. We find no such limitation in the words of Article 40.09, Vernon's Ann.C. C.P., cited by the dissent. Further, *Ticer v. State*, 166 Tex.Cr.R. 334, 313 S.W.2d 301 (1958), also cited in support of such limitation, did not involve the approval of the record but involved the approval of a formal bill of exception under the former Code of Criminal Procedure.

It appears the dissent would not accept an unchallenged and unqualified statement of defense counsel made in open court as to an occurrence there duly recorded by the court reporter until such officer of the court gets

the court to certify that the event referred to occurred. The dissent suggests in part that evidence may be offered at a hearing on a motion for new trial. It is well settled, however, that any conflict in evidence is for the trial judge at such hearing. A formal bill of exception was mentioned, but Article 40.09, subd. 6, Vernon's Ann.C.C.P., makes clear that the office of such bill and a possible subsequent bystander's bill relates to such action, evidence, occurrence, etc., "not otherwise shown by the record." We repeatedly find appellate records where the prosecutor, also an officer of the court, elicits identification testimony from a witness and then states, without certification from the court, "Let the record reflect the witness had identified the defendant." I know of no case where this court has held that such statement by the prosecutor could not be considered. There should be no double standard.

Cr.App.1975) (reversed because of this same prosecutor's comments on the defendant's failure to testify), as well as *Anderson v. State*, 525 S.W.2d 20 (Tex.Cr.App.1975) (also reversed because of improper jury argument by this same prosecutor).

For the reasons stated, the judgment is reversed and remanded.

ROBERTS, Judge (concurring).

I agree that this conviction must be reversed, but I would hold that Article 40.-09(4), Vernon's Ann.C.C.P., does not alone control our determination of the issue presented.

Appellant's counsel urged that the record should reflect *the occurrence of certain observable events,* which counsel described with specificity. On the basis of these events, which were part of the prosecutor's argument, counsel objected that the prosecutor was commenting on the appellant's failure to testify.

The prosecutor then urged that the record should reflect that he was talking about Dr. Stockton in his previous comments. *This statement by the prosecutor was merely a self-serving statement of alleged intent; in no way did it dispute the statement of appellant's counsel that the observable events had in fact occurred.*

The same is true of the trial court's comment, "I'll overrule your objection." This statement failed to dispute or deny the truth of the facts stated by defense counsel. Instead, it merely served to express the trial court's disagreement with counsel's assertion that the stated events were in fact objectionable.

The recitation of counsel thus stood unrebutted and unqualified by court or prosecutor, and hence in the same posture as it would have if neither had spoken.

I concur.

ODOM, Judge (concurring).

I concur in the reversal of this conviction, but take exception to the majority's reliance upon Article 40.09(4), V.A.C.C.P. That provision is authority for finding that counsel made the statement appearing in the record before us. It is not authority for finding that counsel's statement is an accurate statement of what occurred.

Although Article 40.09(4) is not authority for holding that counsel's statement for the record is accurate, I believe the statement itself must be taken as accurate because it was not qualified or disputed by the court or prosecutor, both of whom were in a position to view the occurrence and make a statement for the record of what did occur. If the proposition asserted by the dissent, that a statement "let the record reflect" not specially certified by the trial court shows nothing, is correct, then many cases would require reversal for insufficient evidence because of the widespread prosecutorial practice of having State's witnesses point at someone in the courtroom and the prosecutor then stating, "Let the record reflect the witness has identified the defendant."

The statement of the prosecutor in the instant case is not a qualification of the statement made by appellant's counsel. The prosecutor stated, "Let the record reflect that I was talking about the medical testimony, and Dr. Stockton, the man who took the EEG wasn't up here testifying in Court." If the prosecutor was attempting to show his intent or negate bad faith, his statement was not sufficient to do so. It did not contradict or conflict with appellant's statement of what acts occurred in open court. It was itself a statement of mental processes, and therefore could not constitute a recitation to preserve in the record acts occurring in open court and visible to all. The subjective intent is irrelevant; the test is whether the argument, by words and acts, is of such a character that the jury would naturally or necessarily perceive it as a comment on the failure of the accused to testify. Because the record in this case reflects that such an argument was made, I concur in the reversal of appellant's conviction.

MORRISON, Judge (dissenting).

I agree that the assertion that the prosecutor was standing behind the appellant and looking down at him is not supported by the record before us.

I would further point out that in our opinion in *Salazar v. State, supra,* on rehearing, we acknowledged that the exhibition of the scars had been made. This was based upon a statement in the record *by the court* that "the wounds had been shown to the jury."

I cannot agree with my Brother Onion that he has sufficiently distinguished *Barrientez v. State, supra.* I would hold that it is authoritative in the case at bar and, for that reason, I dissent to the reversal of this conviction.

DOUGLAS, Judge (dissenting).

The majority reverses this conviction on the ground that the prosecutor commented on the failure of the appellant to testify. To reach that conclusion, the majority has elevated an unsworn statement of counsel to the heights of evidence. Heretofore objections and allegations of counsel have not been self-proving.

The majority has in effect unseated the trial judge.

During closing argument, the assistant district attorney was discussing and summarizing the testimony of the various witnesses and other evidence introduced during the course of the trial. The appellant, as a defense to the charge, had raised the issue of insanity and a Dr. Anderson testified as an expert witness for the defense. The record reflects the following:

"MR. CASEY: (Assistant District Attorney) He has had his lay witnesses to come up here as layma n. Of course, we had a couple of laymen testify to you too. He said—that somehow or another he didn't like the way I cross examined his lay witnesses. But, you know, Mr. and Mrs. Poe, he didn't ask them one question. You all are entitled to consider that.

But, anyway, he looks—you know—*he is sitting over there*—you know—we had Dr. Anderson—Dr. Anderson had that thing there, and he had his lawyer arguing to you and everything. But there is somebody that we haven't heard from in this case. And I think you all know who it is. (Emphasis Supplied)

"MR. CANTRELL: (Defense Counsel) Your Honor, we're going to object to that comment. He is obviously commenting—inferring by the place he stood—let the record reflect that he stood right behind the defendant, raised his voice, at that time, and objected—excuse me—not objected—said, 'We haven't heard from somebody in this court.' At that time, Mr. Casey looked down at the defendant in such that by his actions and inferences and comments made, was a comment on not testifying by the defendant.

"MR. CASEY: I was referring to Dr. Stockton, Your Honor.

"MR. CANTRELL: You were not.

"MR. CASEY: *Let the record clearly reflect* that I was talking about the medical testimony, and Dr. Stockton, the man that took the EEG wasn't up here testifying in Court. (Emphasis Supplied)

"THE COURT: I'll overrule your objection.

"MR. CANTRELL: Note our exception.

"MR. CASEY: You heard Dr. Grigson say that if he was—as a physician, instead of asking a juror or anybody, he would want the man that actually ran the chart and interpreted the chart. Dr. Anderson told you that he didn't run it. He couldn't tell us anything about the chart. He had it there, but he said, 'I didn't interpret it. I don't even run those things.' . . ."

The question is two-fold. First, it must be determined whether the assistant district attorney was *in fact* standing behind the appellant and looking at the appellant when he said "but there is somebody that we haven't heard from in this case. And I think you all know who it is." Second, if the record does not reflect those facts, did the comment examined from the standpoint of the jury necessarily refer to the appellant's failure to testify?

The two statements of the prosecutor that appellant "is sitting over there" would indicate that the prosecutor was not standing behind appellant when these statements were made.

There is just as much, or more, in the record to show that appellant was "sitting over there" as there is in the record to show that the prosecutor was standing behind the appellant.

*Salazar v. State*, 397 S.W.2d 220 (Tex.Cr. App.1965), is directly in point. *Salazar* in his trial for murder complained that the trial court allowed a State's witness to exhibit his body to the jury to show two bullet wounds which were received during the confrontation that resulted in the murder of the witness' brother. This Court wrote:

". . . The record reflects that after the witness had exhibited one of the wounds, the jury was taken out and counsel for the defense stated:

" 'Let the record reflect the witness is showing and has exhibited to the jury his body. That he has pulled his shirt up and he shows the jury a scar across his abdomen about the area of his sternum approximately three and a half to four inches in length. The said scar is purple. It stands out vividly. And also it is a raised scar or proud flesh.'

"The trial court at no time certified that the facts related by defense counsel were true and correct.

"As stated in 5 Tex.Jur.2d 330, Sec. 200:

" 'The statement of a ground of objection in a bill of exception is not a certificate of the judge that the facts that form the basis of the objection are true. It only shows that such an objection was made, and is accordingly insufficient. Further, mere recitals in a bill, not verified by the certificate of the judge, or otherwise revealed by the record, cannot be considered by showing injury.'

"And in *Salinas v. State*, Tex.Cr.App., 363 S.W.2d 265, this court held that where there were no photographs or description of the scars which would authorize this court to conclude that they had an ugly, ghastly, or revolting appearance or condition such as would be reasonably calculated to influence and prejudice the rights of the appellant before the jury, no error was shown.

"In the case at bar, there was no showing that the facts as set out in appellants' objection were true, and therefore show no injury to the rights of the appellants."

In the motion for rehearing the record was quoted. It showed that the judge certified that the wounds were exhibited to the jury.

In *Wingate v. State*, 487 S.W.2d 89 (Tex. Cr.App.1972), at page 92, we said:

"In his last ground of error, appellant complains of a 'hoax' perpetrated upon the court by the State's counsel. Appellant, citing no authority, states that though the prosecuting witness Moore lay on a stretcher throughout the length of the trial, he had been seen on several occasions before the trial in a wheelchair. At the hearing on the motion for new trial, appellant's counsel stated:

" 'Your honor, the man was laying on the stretcher under a blanket like a dead man and I want to make a statement now. This is different from argument. This is new evidence, something I received after the trial. And it was after the close of the trial that the

District Attorney, Mr. Patterson, went to either the clerk or the court and had them call or called and said, "Come pick up the stretcher; we're through with it." This man doesn't even have a stretcher; he has a wheel chair, and he goes to all of these beer joints and different places in a wheel chair, and he was laying on a stretcher under a blanket in the court room and it is highly prejudicial to the defense, highly prejudicial and it inflames the minds of the jury.'

"Nowhere other than here does the record reveal anything to back up the claim of a 'stretcher hoax.' Since the statement by appellant's counsel, standing alone, may not be taken as 'evidence' of this claim, there is nothing for this Court to review."

In *Barrientez v. State*, 487 S.W.2d 97 (Tex.Cr.App.1972), the appellant contended that during the testimony of appellant the prosecutor began showing photographs to the jury which the judge had ruled inadmissible. This Court wrote:

". . . Appellant refers us to the record, where the following colloquy occurred:

" 'MR. DE GEURIN: Your Honor, I am sure it is not intentional, but Mr. Pecorino has pictures out that the Court ruled are inadmissible. They are in a position where they can be seen and it is prejudicial. We ask that he refrain from doing that.

" 'THE COURT: That is overruled. Go ahead.

" 'MR. DE GEURIN: That is overruled?

" 'THE COURT: You heard my ruling, sir. Be seated.'

"This statement is all we have in the record before us to substantiate appellant's claim. There is no showing that the jury saw the photographs. *Thomas v. State,* 451 S.W.2d 907 (Tex.Cr.App.1970); *Mills v. State,* 455 S.W.2d 296 (Tex.Cr.

App.1970); *Salazar v. State,* 397 S.W.2d 220 (Tex.Cr.App.1966). Nothing is presented for this Court to review. See *Hall v. State,* 466 S.W.2d 762 (Tex.Cr.App.1971)."

What is the difference between the two cases? Does the majority take statements of some attorneys as true but not others? What is the guideline?

The occurrence of the event complained of must be reflected in the record by the court certifying it occurred, by evidence properly introduced in an informal bill of exception, at a hearing on the motion for new trial, through a formal or bystander's bill of exception, or through some certification by the trial judge that the events in fact occurred as alleged. See *Hardin v. State,* 471 S.W.2d 60 (Tex.Cr.App.1971); *DeLeon v. State,* 500 S.W.2d 862 (Tex.Cr.App.1973); *Stockton v. State,* 487 S.W.2d 69 (Tex.Cr.App.1972); *Sheldon v. State,* 510 S.W.2d 936 (Tex.Cr.App.1974); *Mills v. State,* 455 S.W.2d 296 (Tex.Cr.App.1970); *Hall v. State,* 466 S.W.2d 762 (Tex.Cr.App. 1971); *Jefferson v. State,* 490 S.W.2d 855 (Tex.Cr.App.1973); *Barber v. State,* 477 S.W.2d 868 (Tex.Cr.App.1972); *Nutt v. State,* 144 Tex.Cr.R. 9, 161 S.W.2d 103 (1942); and *Stephen v. State,* 163 Tex.Cr.R. 505, 293 S.W.2d 789 (1956). This is the same rule that applies to allegations in various motions such as motions for continuance and motions for new trials. Such allegations do not prove themselves. Absent any proof, nothing is presented to this Court for review. *Webb v. State,* 460 S.W.2d 903 (Tex.Cr.App.1970); *Hardin v. State,* 453 S.W.2d 156 (Tex.Cr.App.1970); and *Hanna v. State,* 159 Tex.Cr.R. 2, 259 S.W.2d 570 (1953). Holding otherwise would be contra to Article 40.09, Subdivision 6, V.A.C.C.P. See *Nash v. State,* 486 S.W.2d 561 (Tex.Cr.App.1972).

In the case at bar we have no evidence to substantiate defense counsel's unsworn allegations. There is no evidence to show how counsel and the appellant were seated. There was no testimony introduced, or even

proffered, showing where Mr. Casey stood, how far he was from the appellant, exactly where he was looking, or his relationship with respect to the jury. Thus, there is nothing in the record presented to this Court to review other than the comments of Mr. Casey.

The trial judge heard the argument and the objection. He was in a better position to evaluate what occurred in his courtroom. We should not unseat the trial judge and substitute our opinion for his when we were not present in the courtroom. Who is in a better position to rule than the district judge? It is presumed that the trial judge ruled correctly until the contrary is shown.

It is difficult to understand the new holding by the majority that statements of counsel are verified as true. The statement in the concurring opinion that Article 40.-09(4), V.A.C.C.P., is not authority for finding that counsel's statement is an accurate statement of what occurred is correct. But it is hard to understand the next sentence, ". . . the statement itself must be taken as accurate because it was not qualified or disputed by the court or prosecutor. . . ."

It has always been the impression of this writer that the trial judge is not a litigant and is not representing a litigant. He is the judge. When he rules that ruling is presumed to be correct absent a showing to the contrary. In the present case, as in *Ross v. State*, Tex.Cr.App., 504 S.W.2d 862, the defense attorney could have asked the trial judge to certify to the correctness of his statement, if it were correct.

The judges concurring with the majority should review the statements of both attorneys. They are apparently in conflict. The judge settled the conflict when he ruled. Requiring the prosecutor to dispute an objection to defense counsel would be to detract from the decorum in the courtroom. This should not be encouraged.

To have the trial judge to dispute what defense counsel has stated would take away from the dignity of the court. Trial judges should not get into arguments with the attorneys. They should rule.

It has not been the practice before today for a trial judge to give reasons for his rulings. Reasons for a ruling may amount to a comment on the weight of the evidence or an opinion by the trial judge.

The new rule of today is that the trial judge must tell defense counsel his statement is not true or be reversed on appeal.

In this case, unlike *Ross v. State*, 504 S.W.2d 862 (Tex.Cr.App.1974), there were no statements by the trial judge ratifying the attorney's allegations. In *Ross*, the trial judge said: "Yes, sir. . . ." without further clarifying remarks following a statement by defense counsel. This Court held that to be a ratification by the trial judge of the facts alleged by the defense attorney. In the instant case there was no such ratification.

The trial court's approval of the record when it is completed is not such a certification. It is certification only that all pages in the record "are true and correct copies of all proceedings, and of the court reporter's notes; and of all exhibits, as the same appear and are of record and on file in the above entitled and numbered cause, and said record is hereby approved." Article 40.09, V.A.C.C.P. See also *Ticer v. State*, 166 Tex.Cr.R. 334, 313 S.W.2d 301 (1958).

The approval of the record does not make the statements of the witnesses true even though the prosecutor or the court does not refute them.

Do Mr. Casey's statements in and of themselves amount to a comment on the appellant's failure to testify? *Garcia v. State*, 513 S.W.2d 559 (Tex.Cr.App.1974), controls. The State has a right to comment on the failure of the appellant to call certain witnesses to support his defensive theory. Here, as in *Garcia*, the prosecutor stated that he was referring to another witness. Dr. Stockton was mentioned during the testimony of the defense witness Dr. Ander-

son, but Dr. Stockton was never called. Mr. Casey, following appellant's objection, continued to discuss the testimony of Dr. Anderson and the failure of the defense to call Dr. Stockton. Thus, the argument refers to other witnesses and not the appellant and the language used was not manifestly intended or of such character that the jury would naturally and necessarily take it to be a comment on the appellant's failure to testify. *Beal v. State*, 520 S.W.2d 907 (Tex. Cr.App.1975); *Lipscomb v. State*, 467 S.W.2d 417 (Tex.Cr.App.1971); *Anderson v. State*, 504 S.W.2d 507 (Tex.Cr.App.1974).

Further, even if the statement could be construed as such a comment, defense counsel first commented on appellant's failure to testify before the argument of the prosecutor. He argued concerning the presumption of insanity as follows:

". . . Now, the contrary can appear—the only way it can appear is from the evidence on that stand and by your observations of the defendant, whether he takes the stand or not, through your looking at him."

Counsel asked the jurors to believe that appellant was insane from their observations of him "whether he takes the stand or not, through your looking at him." He was in effect telling the jury that his client was silent and even though he did not take the stand, they could use his appearance to find him insane and not guilty.

It has always been the rule that where counsel for accused refers to his failure to testify, it was not error for the prosecutor to comment thereon. See *Slater v. State*, 166 Tex.Cr.R. 606, 317 S.W.2d 203 (1958); and *Meador v. State*, 113 Tex.Cr.R. 357, 23 S.W.2d 382 (1929), and 1 Branch's Ann.P. C.2d, Section 395, page 414.

Following the majority of this Court, when a defendant represents himself, a statement, "Let the record reflect", followed by his version of what happens in the courtroom will be taken as true. An example of what will be taken as true is found in

*State v. Townes*, 522 S.W.2d 22 (Mo.Ct.App. 1975). Townes, the defendant, questioned the jury panel personally. He informed the prospective jurors that he was a Black Muslim and, like other Muslims, felt that all white people were devils. After some discussion with the court, Townes stated:

"I'm saying you are [devils]. I would like to know if there is anyone here that believes he is not a Devil[?]

"The Court: Sit down. Just a minute. Mr. Sheriff, put the defendant in his chair.

"Mr. Townes: Let the record show that everyone in the room raised their hands to the question that they were Devils.

"Unidentified Juror: I didn't raise my hand.

"Two Unidentified Jurors: I didn't either."

According to Townes, only three prospective jurors refuted the statement that they were devils. Under the reasoning of the majority, the statement that the other prospective jurors were devils would have to be taken as true.

In the trial of the Chicago Eight, the defendants apparently tried to take over the courtroom. See *United States v. Seale*, 461 F.2d 345 (7th Cir. 1972). Bobby Seale, one of the defendants who had previously informed the court that he was representing himself stated that he wanted to cross-examine a witness, William Frapolly, and the following occurred:

"Mr. Hayden (another defendant): Let the record show the Judge was laughing.

"Mr. Seale: Yes, he is laughing."

Under the opinion reversing the conviction a trial judge or prosecutor must refute such statements or they will be taken as true. It is a sad state of affairs when this Court requires a trial judge to get into a swearing match with litigants or attorneys.

Recently the Supreme Court of the United States held that a defendant has a right

to represent himself and counsel cannot be forced upon him. See *Faretta v. California*, —— U.S. ——, 95 S.Ct. 2525, 45 L.Ed.2d 562. When some defendants, especially those who would like to destroy our system of government, defend themselves, every conceivable statement accusing the judge and prosecutor of misconduct will be made. Gutter-type tactics will be used. The majority would require the trial judge to answer them or get on their level.

We should not require trial judges to get into swearing matches with militant or other obstreperous defendants. This has never been the rule before and should not be now.

The defendant who claims something happened should ask the judge to certify to that fact. If it happened and the judge refuses to so certify, a defendant may prove the occurrence by a bystander's bill of exception.

No reversible error has been shown. The judgment should be affirmed.